598 S.E.2d 732

**The STATE, Respondent,**

v.

**Robert Orlando HILL, Appellant.**

**No. 3826.**

Court of Appeals of South Carolina.

Heard April 8, 2004.
Decided June 21, 2004.

Deputy Chief Attorney Joseph L. Savitz, III, of Columbia, and Ernest Charles Grose, Jr., of Greenwood, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, all of Columbia; and Solicitor William Townes Jones, of Greenwood, for Respondent.

STILWELL, J.:

Robert Orlando Hill appeals his convictions for murder and possession of a firearm during the commission of a violent crime, arguing the trial court erred in (1) allowing the State to comment on his post-arrest silence and (2) refusing to issue a specific self-defense charge he requested. We reverse his convictions and remand for a new trial.

## BACKGROUND

Hill was charged with shooting Artie Hill (Victim, no relation) while Victim sat in the passenger seat of a parked car. The State presented four witnesses of the incident at trial. Ira Green testified Victim was sitting in the car when Hill

rode up on his bicycle, walked up to the passenger side of the car, and fired the gun at Victim's head. Green said Victim never opened the door or tried to get out of the car. Shannon Hill's (no relation) testimony essentially mirrored Green's, but she remembered approximately five shots. A third witness, Michelle Clinkscales, testified she was standing nearby when she heard shots. After a pause, she heard more shots and saw Hill ride away on his bike. The fourth witness, Jeffrey Tatum, testified he had been riding in the car with Victim for over an hour when they arrived at the apartment complex where the shooting occurred. Tatum said when they stopped in the parking lot, he and another friend got out of the car. He explained Hill arrived on his bike, said, "hey, I heard you was looking for me," got off his bike, walked toward the car, and started shooting Victim. Tatum testified Victim had a stick in the car, but never attempted to use it.

Hill also testified, admitting to shooting Victim but claiming he did so in self-defense. When asked why he thought it was self-defense, he said, "this right here has been going on for a long time. More than one occasion Artie put sticks and baseball bats at me trying to take my life...." Specifically regarding this incident, Hill stated Victim yelled something out of the window as Hill rode up on his bike. He then saw Victim had a stick beside him and was reaching for the door. Hill testified that he was then scared for his life and "ran up to the car to defend" himself. Victim suffered six gunshot wounds, including four to the head.

## DISCUSSION

Hill argues the trial court erred by allowing the State to comment on his post-arrest silence in violation of the Due Process Clause and *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The State counters that Hill opened the door to the questions and, alternatively, that any error was harmless. We agree with Hill.

Hill surrendered shortly after the shooting and was later taken to jail. Sergeant Terrance Harvard, the investigator in charge, testified he saw Hill in jail about an hour after the shooting. Hill signed a pre-printed voluntary statement form indicating he had been warned of his rights, including his right

to remain silent. In the space designed for a statement, Hill signed his name and wrote, "I do not want to make a statement." This form was marked as a court exhibit at trial.

Sergeant Harvard did not testify to any conversation he had with Hill. The questioning Hill challenges occurred during his own testimony. When cross-examined about what he did after the shooting, Hill said, "[t]hat's when I went and turned myself in so I could come here today to prove my innocence, that it was self-defense. That's why I didn't write a statement or no report on everything that happened." Hill repeated this claim again and later added, "I told everybody it was self-defense."

Shortly thereafter, the solicitor asked the following question:

SOLICITOR: You didn't tell Terry Harvard that night it was self-defense, did you?

Hill's counsel immediately objected and moved for a mistrial. The objection was overruled. After a second inquiry about whether he had told anyone the shooting was self-defense prior to testifying at trial, defense counsel objected again, and the objection was again overruled. When Hill volunteered he had told his attorney and the State asked when he first met with his attorney, the trial court sustained defense counsel's objection but denied his mistrial motion.

In *Doyle v. Ohio,* the United States Supreme Court held a state prosecutor violates a defendant's due process rights by impeaching his exculpatory story, told for the first time at trial, through cross-examination regarding his post-arrest silence. *Doyle,* 426 U.S. at 611, 96 S.Ct. 2240. The court reasoned that because *Miranda*[1] warnings implicitly assure that silence will carry no penalty, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618, 96 S.Ct. 2240. Relying on *Doyle,* our supreme court held "the State may neither comment upon nor present evidence at trial of a defendant's decision to exercise his right to remain silent or be represent-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ed by an attorney." *Edmond v. State,* 341 S.C. 340, 345, 534 S.E.2d 682, 685 (2000).

■ As an exception to the general rule, "the State may cross-examine a defendant about his post-arrest, post-*Miranda* silence when he offers an exculpatory story at trial and claims he told police the same version upon arrest." *State v. McIntosh,* 358 S.C. 432, 442, 595 S.E.2d 484, 489 (2004). However, such is not the case here as Hill did not claim he told police the shooting was in self-defense. Here, the State clearly questioned Hill on his post-arrest, post-*Miranda* silence in violation of *Doyle.*

The State contends any *Doyle* violation in this case was invited by Hill's testimony and even if error, was harmless. We disagree.

■ Our supreme court recently addressed the question of whether a defendant opened the door to a *Doyle* violation in *McIntosh.* In that case, the State asserted the defendant's testimony created an appearance that he fully cooperated with law enforcement, thus opening the door to questions about whether he shared his exculpatory story with police at the time of his arrest. *McIntosh,* 358 S.C. at 443–45, 595 S.E.2d at 490–91. McIntosh testified he voluntarily returned to South Carolina upon learning authorities were looking for him but said he did not give them a statement. He explained he would have been talking to police if he knew anything about the crimes. Our supreme court held McIntosh did not, "explicitly or implicitly, assert he cooperated with police." *Id.* at 446, 595 S.E.2d at 491. Instead, the court noted the focus of his defense was that he knew nothing about the crimes and thus had nothing to tell police. *Id.* Like McIntosh, Hill explained he turned himself in to authorities and did not give a statement. Hill claimed he surrendered so he could prove self-defense in court. This testimony did not amount to an assertion that he cooperated with authorities and did not invite the State to challenge his self-defense explanation by questioning him on his exercise of his right to remain silent.

■ Nor was the error harmless beyond a reasonable doubt. For a *Doyle* violation to be harmless, the record must establish:

that the reference to silence be a single reference; that the single reference never be repeated or alluded to in either the trial or in jury argument; that the prosecutor does not directly tie the defendant's silence to his exculpatory story; that the exculpatory story be totally implausible, transparently frivolous; and that evidence of guilt be overwhelming. *State v. Truesdale*, 285 S.C. 13, 18–19, 328 S.E.2d 53, 56 (1984). Although there is an argument that many of these factors are present, the State directly tied Hill's silence to this exculpatory story. In essence, the prosecution attempted to show had Hill acted in self-defense he would have immediately explained this to authorities. Because the State directly tied Hill's silence to his defense, the error cannot be harmless. We therefore reverse Hill's convictions and remand for a new trial.[2]

**REVERSED AND REMANDED.**

HUFF, J., and CURETON, Acting J., concur.

---

**2.** Because our holding on this issue disposes of the case, we do not address Hill's remaining issue. *See Whiteside v. Cherokee County Sch. Dist. No. One*, 311 S.C. 335, 340–41, 428 S.E.2d 886, 889 (1993) (noting appellate court need not address remaining issues when determination of prior issue is dispositive).