644 S.E.2d 769

**Anthony MARLAR, Petitioner**

v.

**STATE of South Carolina, Respondent.**

No. 4225.

Court of Appeals of South Carolina.

Heard Sept. 14, 2006.
Decided March 26, 2007.
Rehearing Denied May 17, 2007.

Assistant Appellate Defender Robert M. Dudek, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Christopher L. Newton, all of Columbia, for Respondent.

BEATTY, J.:

Anthony Marlar was convicted of first-degree burglary and first-degree criminal sexual conduct. His petition for post-conviction relief (PCR) was denied. This court granted certiorari to review the PCR court's denial of relief. We vacate and remand.

## FACTS

In the early morning hours of February 23, 1993, two men with stockings covering their faces broke into the victim's home. The victim's three-year-old daughter was sleeping in the bed with her at the time. The victim heard the short, stocky male tell the tall, slim male, "Tony, get the girl out of here." The tall, slim male replied, "Oh, sh—," when the name "Tony" was used. "Tony" took the child out of the room and returned. The short, stocky male asked "Tony," "Is this her?" After "Tony" nodded his head in assent, the two men held a

knife to victim and took turns raping her. When they finished, they cleaned the victim and threatened her before leaving.

The victim went to the hospital, and a rape kit was performed. The victim told hospital personnel and police that both males ejaculated during the crime. She told police that she believed the two males were brothers Bobby Marlar and Anthony "Tony" Marlar, because of their build. The Marlar brothers were in her house the prior week to help her roommate, whom Bobby Marlar was dating, move out of the house. The victim did not recognize the voices of the perpetrators. Although both Bobby and Tony Marlar were briefly interviewed, the criminal investigation did not progress for several years.

In 1996, the investigation was reopened. In March 1996, police questioned Jerry Fields, who denied participating in the crime and indicated that he was with Tony Marlar ("Marlar") that evening. After DNA collected from the victim matched Fields, he eventually confessed and implicated Marlar as the second suspect. Fields agreed to plead guilty and to testify at Marlar's trial in exchange for a twenty-year sentence. There was no DNA evidence linking Marlar to the crime, and two pubic hairs found in the bed did not match Fields, the victim, the victim's boyfriend, or Marlar. Prior to the DNA results linking Fields, Marlar was questioned by police and he stated he could not recall where he was three years earlier on the night of the crime. Marlar also denied any involvement in the crime and indicated that he probably was with Fields that night.

At trial, the victim testified that she was absolutely sure that the tall, slim rapist was Marlar because: (1) of his build; (2) Fields referred to the second rapist as "Tony;" and (3) the second rapist was familiar with her house and knew the telephone in her bedroom did not work. Unlike her initial statement, the victim testified at trial that the second rapist did not ejaculate, explaining the lack of DNA evidence linking Marlar. Fields testified that he had also been in the victim's house, when the victim was not there, to help Bobby Marlar move out his girlfriend prior to the rape. Fields stated that he and Marlar raped the victim, and he denied having any disagreement with Marlar or any other motivation to testify

against him. Marlar did not testify and no evidence was presented in his defense. He was convicted and sentenced to a total of forty-four years.

Marlar filed an application for PCR. In his application, Marlar insinuated that Fields and Fields' brother, "Terry," who were both in prison for burglaries they committed together, were the actual rapists. He alleged counsel was ineffective for, among other reasons, failing to cross-examine Fields about his motivation to implicate Marlar because Marlar swore out a warrant against Fields in 1994 for damaging Marlar's truck. Marlar also alleged that counsel was ineffective for failing to present the exculpatory hair evidence and in not allowing him to testify in his own defense.

Counsel testified at the PCR hearing that he did not recall whether Marlar informed him about the warrant taken out against Fields. Counsel stated he did not think Marlar would hold up well on cross-examination by the State. Counsel also stated that he did not subpoena the SLED agent who examined the pubic hairs or present the pubic hair evidence because there was no other DNA evidence linking Marlar to the crime, and he did not want to present any evidence because he did not want to lose the right to last closing argument. Counsel stated that he did not think having the SLED agent to testify regarding the pubic hairs would change anything. The SLED agent who tested the pubic hairs stated at the PCR hearing that if he had been called to testify at the trial, he would have testified that the hairs did not match Marlar, Fields, the victim, or the victim's boyfriend. Finally, Marlar testified that counsel never discussed the pubic hairs with him, counsel merely informed him that the DNA evidence did not match. Marlar also stated counsel told him not to testify, despite Marlar's desire to do so, because he would lose the last argument.

After a hearing, the PCR court denied relief and dismissed the petition. The court found counsel rendered "reasonably effective assistance under the prevailing professional norms and demonstrated a normal degree of skill, knowledge and professional judgment that is expected of an attorney who practices criminal law." As to the specific issues raised in the PCR application, the court held: "As to any allegations raised

in the application or at the hearing not specifically addressed by this Order, this Court finds that the applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds that the applicant failed to meet his burden of proof regarding them." This petition for certiorari followed.

## STANDARD OF REVIEW

 "This Court gives great deference to the post-conviction relief (PCR) court's findings of fact and conclusions of law." *Dempsey v. State,* 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005). A PCR court's findings will be upheld on appeal if there is "any evidence of probative value sufficient to support them." *Id.* The appellate court must reverse where there is no probative evidence to support the findings. *Pierce v. State,* 338 S.C. 139, 144, 526 S.E.2d 222, 225 (2000).

## LAW/ANALYSIS

Marlar argues the PCR court's order was inadequate and should be remanded for specific findings of fact. We agree.

A PCR court "shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented." S.C.Code Ann. § 17–27–80 (2003). PCR courts have been repeatedly admonished regarding the failure to specifically rule on the issues presented in a PCR application. *See Bryson v. State,* 328 S.C. 236, 236–37, 493 S.E.2d 500, 500 (1997) (vacating a PCR order and remanding the matter for specific findings of fact and conclusions of law); *McCullough v. State,* 320 S.C. 270, 272, 464 S.E.2d 340, 341 (1995); *Pruitt v. State,* 310 S.C. 254, 255, 423 S.E.2d 127, 128 (1992) (vacating and remanding PCR order dismissing the action where the PCR court failed to address the issues raised in the application); *see also Garner v. State,* 371 S.C. 1, 1, 636 S.E.2d 860, 860 (2006) (emphasizing language in section 17–27–80 that specific findings of fact and conclusions of law regarding *each issue presented* must be made by the PCR court).

Citing *Humbert v. State,* 345 S.C. 332, 548 S.E.2d 862 (2001), the State argues that any complaint regarding the sufficiency of the order is not preserved for review because Marlar did not file a Rule 59(e), SCRCP, motion requesting

the PCR court to specifically address each issue raised in the application. In the past, our state supreme court has overlooked the failure to file a Rule 59(e), SCRCP motion in order to attend to the pervasive problem of inadequate orders. *McCullough,* 320 S.C. at 272, 464 S.E.2d at 341 (remanding matter to PCR court, despite the fact that no Rule 59(e), SCRCP motion had been filed, and admonishing all those involved to carefully prepare and review PCR orders to ensure they specifically address the issues raised and make conclusions of law); *Pruitt,* 310 S.C. at 255, 423 S.E.2d at 128 (vacating and remanding the PCR court's order, despite the fact that no Rule 59(e), SCRCP motion was filed, to address the failure of many PCR orders to address all the issues raised). In the more recent case of *Humbert,* the court did not overlook the failure to file a Rule 59(e) motion to preserve one issue not specifically addressed in the PCR order. *Humbert,* 345 S.C. at 337, 548 S.E.2d at 865 (finding that, although the PCR court addressed the issue of whether it was ineffective assistance of counsel to allow the petitioner to wear the jail jumpsuit during his trial, the issue of whether it was ineffective assistance for trial counsel to allow petitioner to proceed to trial wearing shackles and a jail identification bracelet was not preserved because the PCR court's order did not address it and no Rule 59(e), SCRCP, motion was filed). It does not appear that *Humbert* overruled the prior cases, and it is not clear whether, in light of *Humbert,* an appellate court may still take the extraordinary action of overlooking the failure to file a Rule 59(e) motion and remanding matters so that specific orders may be issued by the PCR court. What is clear, however, is that the problem of PCR orders that do not address each issue raised by an applicant continues to permeate our judicial system.

██ In any event, we do not believe that we need to take any extraordinary action in this case because we believe the issue is preserved. The PCR court's order specifically acknowledged that some issues were not addressed. The court made the finding that, as to those issues, no evidence was presented. When, as here, the PCR court's order specifically addresses its failure to delineate each issue and gives reasons for the ruling, the issue has been finally ruled upon by the lower court and is preserved for appeal.

As to the merits of the PCR court's ruling, Marlar presented evidence to support his claims. Accordingly, there is no evidence to support the PCR court's finding that he failed to present any evidence. We must vacate the order and remand the matter for a new PCR hearing. We caution the PCR court on remand to make specific findings of fact and conclusions of law as to each issue raised in Marlar's PCR application.

## CONCLUSION

For the reasons outlined above, the PCR court's decision denying relief is

**VACATED and REMANDED for a new hearing.**

HEARN, C.J., and SHORT, J., concur.