652 S.E.2d 765

**Rafeal BROWN, Petitioner**

v.

**The STATE of South Carolina, Respondent.**

**No. 4297.**

Court of Appeals of South Carolina.

Heard Sept. 11, 2007.
Decided Oct. 5, 2007.

Wanda H. Carter, of Columbia, for Petitioner.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Karen Ratigan, all of Columbia, for Respondent.

ANDERSON, J.:

The post-conviction relief (PCR) judge denied Rafeal Brown's application for relief holding that, even if counsel was ineffective, Brown failed to establish prejudice. This court granted *certiorari* to consider whether trial counsel erred in failing to object to a *Doyle* error at trial. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

On the night of August 5, 1994, Brown was dancing with a girl inside the Castleblanca Club, a nightclub in Clio. After a male patron passing the pair made what Brown considered to be a threatening gesture, the two began to fight. The fight caused great commotion in the club and more patrons joined

in. The crowd moved outside into the parking lot. The testimony of several eyewitnesses at trial revealed that Brown grabbed a gun from a friend's hand and shot multiple times into the crowd. Two bystanders were struck by the bullets, and Brown ran on foot from the scene. One victim, Louis Bostic, died the day of the shooting and the other, Ron Bostic, died five days later.

At trial, Brown took the stand in his own defense. He alleged, for the first time, that one of his friends was the shooter and that the eyewitnesses coordinated stories to frame him. On cross examination, the solicitor asked Brown why he had not given a statement to police relating the version of events he now gave at trial. Additionally, during his closing argument, the solicitor argued the lack of a statement indicated Brown's guilt. Brown's counsel made no objections.

Following his conviction, Brown appealed under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The appeal was dismissed by the South Carolina Supreme Court. *State v. Brown*, Op. No. 96–MO–256 (S.C. Sup.Ct. filed Dec. 12, 1996). Brown then filed for post-conviction relief in December 1996 and amended the application in June 2003. An evidentiary hearing was held in September 2003 in Darlington County.

At the PCR hearing, Brown argued his counsel was ineffective for failing to object to the solicitor's questions about and references to his failure to provide a statement to police. Specifically, Brown averred the solicitor made numerous comments that constituted *Doyle* violations. During cross-examination, the solicitor stated:

"Everybody else gave the police a statement the next morning at nine o'clock."

"And during all that time, some ten months, you haven't given [the police] a statement, have you?"

"And when you came in at 3:00 in the morning you didn't call the police and tell them Eric David had shot somebody, did you?"

"You didn't call the police and tell them Eric David had a gun, did you?"

Brown contended the solicitor committed a *Doyle* violation with the following comment made during closing argument:

"He hasn't given a statement. He hasn't given a statement because he is guilty."

In response to Brown alleging ineffective assistance, trial counsel testified that it is fairly typical for solicitors to ask on cross-examination why the defendant didn't take particular actions if innocent. Counsel opined Brown's failure to make a statement did not affect the outcome of the trial. In light of the numerous eyewitnesses who gave statements to police and testified at trial, counsel explained his strategy was to draw the jurors' attention to the discrepancies amongst the witnesses' stories. Counsel stated that he typically does not object during closing argument for fear of creating a negative impression with the jury.

In denying post-conviction relief, the PCR judge found there was "overwhelming evidence in the case for conviction of [Brown]." Further, the judge held "that even if there were a failure to object to certain testimony, that [Brown] has failed to establish prejudice in this matter." The PCR judge found that trial counsel "articulated valid strategic reasons for deciding not to object to portions of the solicitor[']s examination and of his closing argument. [Brown] has not shown that counsel was deficient in that choice of tactics."

## ISSUE

Did the PCR judge err in not finding trial counsel ineffective for failing to object to a *Doyle* violation at trial?

## STANDARD OF REVIEW

In a PCR proceeding, the applicant bears the burden of establishing that he is entitled to relief. *Edwards v. State,* 372 S.C. 493, 494, 642 S.E.2d 738, 739 (2007); *Caprood v. State,* 338 S.C. 103, 525 S.E.2d 514 (2000). "[P]etitioner must meet the standard established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Edmond v. State,* 341 S.C. 340, 346, 534 S.E.2d 682, 685 (2000). To establish a claim of ineffective assistance of counsel, a PCR applicant must prove: (1) that counsel failed to render reason-

ably effective assistance under prevailing professional norms; and (2) that the deficient performance prejudiced the applicant's case. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Morris v. State,* 371 S.C. 278, 639 S.E.2d 53 (2006); *Cherry v. State,* 300 S.C. 115, 386 S.E.2d 624 (1989). The burden is on the applicant in a post-conviction proceeding to prove the allegations in his application. Rule 71.1(e), SCRCP; *Von Dohlen v. State,* 360 S.C. 598, 603, 602 S.E.2d 738, 741 (2004); *Butler v. State,* 286 S.C. 441, 334 S.E.2d 813 (1985). "To establish a claim of ineffective assistance of trial counsel, a PCR applicant has the burden of proving counsel's representation fell below an objective standard of reasonableness and, but for counsel's errors, there is a reasonable probability that the result at trial would have been different. . . ." *Johnson v. State,* 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997); *Underwood v. State,* 309 S.C. 560, 425 S.E.2d 20 (1992); *Simmons v. State,* 308 S.C. 481, 419 S.E.2d 225 (1992). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Johnson v. State,* 325 S.C. 182, 480 S.E.2d 733 (1997). "Furthermore, when a defendant's conviction is challenged, 'the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'" *Ard v. Catoe,* 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007) (citing *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052).

"This court gives great deference to the post-conviction relief (PCR) court's findings of fact and conclusions of law." *Marlar v. State,* 373 S.C. 275, 279, 644 S.E.2d 769, 771 (Ct.App.2007) (citing *Dempsey v. State,* 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005)); *McCray v. State,* 317 S.C. 557, 455 S.E.2d 686 (1995). An appellate court must affirm the PCR court's decision when its findings are supported by any evidence of probative value. *Custodio v. State,* 373 S.C. 4, 9, 644 S.E.2d 36, 38 (2007); *Cherry v. State,* 300 S.C. 115, 386 S.E.2d 624 (1989). However, an appellate court will not affirm the

decision when it is not supported by any probative evidence. *Edmond v. State,* 341 S.C. 340, 347, 534 S.E.2d 682, 686 (2000); *Holland v. State,* 322 S.C. 111, 470 S.E.2d 378 (1996).

## *LAW/ANALYSIS*

Brown argues the PCR judge erred in not finding trial counsel ineffective for failing to object to comments made by the solicitor that Brown never gave the police a statement. Specifically, Brown contends the solicitor's line of questioning and comments on his silence violated his constitutional rights under *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

## I.  *DOYLE v. OHIO*

In *Doyle,* the Supreme Court held "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle,* 426 U.S. at 619, 96 S.Ct. 2240.  In that case, the defendants received *Miranda* warnings when they were arrested for selling marijuana.  They made no statements to the police.  At their separate trials, the defendants testified, for the first time, about their innocence explaining they had been framed by a government informant.  The State then attempted to impeach the defendants' credibility on cross-examination by questioning them about their post-arrest silence.  The State did not suggest that the evidence was admissible as evidence of guilt, but asserted the jury needed all relevant evidence surrounding the truthfulness of the defendants' exculpatory statements. *Doyle,* 426 U.S. at 617, 96 S.Ct. 2240.

The Court held "the *Miranda* decision compels rejection of the State's position." *Id.* at 617, 96 S.Ct. 2240.  The Court elucidated:

'[W]hen a person is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, ... it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he

was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.'

*Id.* at 619, 96 S.Ct. 2240 (quoting *United States v. Hale,* 422 U.S. 171, 182–183, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975)). The Court explained that *Miranda* warnings convey an implicit assurance to an arrested person that he will not be penalized for remaining silent, thus, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618, 96 S.Ct. 2240.

In *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the Supreme Court addressed impeachment using pre-arrest silence. The Court distinguished the case from *Doyle* noting this defendant had not yet received the *Miranda* warnings. "In this case, no governmental action induced the petitioner to remain silent before arrest." *Id.* at 240, 100 S.Ct. 2124. The defendant stabbed and killed a man, but he was not taken into custody until he turned himself in two weeks later. After testifying at his murder trial that the stabbing was in self-defense, the prosecutor sought to impeach the defendant by asking whether he reported the incident to the police prior to his arrest. In his closing argument, the prosecutor again made reference to the pre-arrest silence. The defendant was found guilty of manslaughter.

The Court held the use of pre-arrest silence did not deny due process and explained:

In this case, no governmental action induced petitioner to remain silent before arrest. The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings. Consequently, the fundamental unfairness present in *Doyle* is not present in this case. We hold that prearrest silence does not violate the Fourteenth Amendment.

*Id.* at 240, 100 S.Ct. 2124. Additionally, the Court noted:

Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. 3A J. Wigmore, Evidence § 1042, p. 1056 (Chadbourn rev. 1970). Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent

with present statements that impeachment by reference to such silence is probative.

*Id.* at 239, 100 S.Ct. 2124.

*Doyle* and its progeny have thus made clear that it is the breach of the implied assurance contained in the *Miranda* warnings that violates the fundamental fairness required by the Due Process Clause. *Wainwright v. Greenfield,* 474 U.S. 284, 291, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986).

In *Wainwright,* the defendant appealed a conviction for sexual battery. He was arrested two hours after the crime, and he was read the *Miranda* warnings three times. He repeatedly stated that he understood his rights and that he wanted to speak with an attorney before making any statement. In his closing argument, the prosecutor suggested these repeated refusals were inconsistent with his insanity defense.

The Court held use of the respondent's post-arrest, post-*Miranda* silence was a violation of due process under *Doyle.* "The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony." *Wainwright,* 474 U.S. at 292, 106 S.Ct. 634. *Cf. Roberts v. United States,* 445 U.S. 552, 561, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) (holding that postconviction, presentencing silence does not resemble postarrest silence induced by assurances in *Miranda* warnings); *Greer v. Miller,* 483 U.S. 756, 763, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (cross-examination concerning inconsistent postarrest, post-*Miranda* statements "makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent") (quoting *Anderson v. Charles,* 447 U.S. 404, 407–408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980)).

The courts of South Carolina have consistently recognized the significance of *Doyle* on post-arrest silence. Moreover, our supreme court and appellate court have warned solicitors against violation of the *Doyle* prohibition. *State v. Myers,* 301 S.C. 251, 258–259, 391 S.E.2d 551, 555 (1990); *State v. Arther,* 290 S.C. 291, 350 S.E.2d 187 (1986); *State v. Holliday,* 333

S.C. 332, 509 S.E.2d 280 (Ct.App.1998); *State v. Gray,* 304 S.C. 482, 405 S.E.2d 420 (Ct.App.1991).

In *State v. Smith,* 290 S.C. 393, 350 S.E.2d 923 (1986), our supreme court granted *certiorari* to determine if a defendant convicted of murder and assault and battery with intent to kill was denied due process. The defendant relied on an insanity defense and provided psychiatric testimony that he was insane at the time of the crime. Upon cross-examination, the prosecutor asked the psychiatrist if he was aware of the defendant's refusal to make a statement to police. Defense counsel objected before the psychiatrist answered, but the trial court did not give a curative instruction. Our supreme court reversed the defendant's conviction and enunciated:

> An accused has the right to remain silent and the exercise of that right cannot be used against him. The State cannot, through evidence or the solicitor's argument, comment on the accused's exercise of his right to remain silent. *State v. Woods,* 282 S.C. 18, 316 S.E.2d 673 (1984). *See also, Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Testimony that a defendant refused to comment on an accusation against him is an unconstitutional comment on his post-arrest silence. *State v. Middleton,* 288 S.C. 21, 339 S.E.2d 692 (1986). *State v. Sloan,* 278 S.C. 435, 298 S.E.2d 92 (1982).

*Id.* at 394–95, 350 S.E.2d at 924.

In *State v. Gray,* 304 S.C. 482, 405 S.E.2d 420 (Ct.App.1991), this court found a defendant had been denied due process by the prosecutor's efforts to impeach with post-arrest, post-*Miranda* silence. In this assault with intent to commit criminal sexual conduct trial, Gray did not give any statement to the police but took the stand at trial and asserted his innocence. The prosecutor on cross-examination asked if he was read his rights after being arrested and whether he understood them. Gray responded affirmatively and the prosecutor next asked if he then gave the story he was now presenting to the jury. Gray replied he only told the police he would not give a statement. The prosecutor then asked whether he expected the jury to believe him, at which point defense counsel objected. The objection was overruled and the prosecutor repeated his last question.

In reversing *Gray,* this court asseverated, "[c]ross examination by the state of the defendant for impeachment purposes on the defendant's silence after receiving the *Miranda* warnings is a violation of the Due Process Clause of the Fourteenth Amendment." *Id.* at 484, 405 S.E.2d at 421 (citing *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)). *See also Edmond v. State,* 341 S.C. 340, 345, 534 S.E.2d 682, 685 (2000) (relying on *Doyle,* state may neither comment upon nor present evidence at trial of a defendant's exercise of his right to remain silent); *State v. Reid,* 324 S.C. 74, 78, 476 S.E.2d 695, 696 (1996) ("It is a violation of due process for a State to permit comment on a defendant's post-arrest silence since the giving of *Miranda* warnings might induce silence by implicitly assuring a defendant his silence will not be used against him.") (overruled on other grounds by *State v. Watson,* 349 S.C. 372, 563 S.E.2d 336 (2002)); *State v. Myers,* 301 S.C. 251, 258–259, 391 S.E.2d 551, 555 (1990) (finding unpreserved *Doyle* violation where prosecutor repeatedly commented on defendant's post-arrest silence); *State v. Johnson,* 293 S.C. 321, 323, 360 S.E.2d 317, 319 (1987) (referring to *Doyle,* when an accused asserts a constitutional right, the State may not comment upon it or use it to argue in favor of guilt or punishment); *State v. Woods,* 282 S.C. 18, 20, 316 S.E.2d 673, 674 (1984) (reversing conviction where solicitor introduced evidence that defendant exercised right to remain silent); *State v. Hill,* 360 S.C. 13, 16, 598 S.E.2d 732, 733 (Ct.App.2004) (prosecutor committed *Doyle* violation by asking defendant on cross-examination why he had not given police the exculpatory story he testified to at trial); *State v. Holliday,* 333 S.C. 332, 509 S.E.2d 280 (Ct.App.1998) (reversing conviction because defendant repeatedly asked on cross-examination why he had not told his version of events until trial).

## II. *DOYLE INAPPOSITE*

In the case *sub judice,* the PCR judge correctly found Brown was not entitled to relief under *Doyle* because it was not error for the solicitor to refer to the fact Brown did not make a statement to the police. The United States Supreme Court has held the use of post-arrest silence for impeachment purposes is allowed when no *Miranda* warnings are given. *Brecht v. Abrahamson,* 507 U.S. 619, 628, 113 S.Ct. 1710, 123

L.Ed.2d 353 (1993). Here, there is nothing in the record to indicate the Petitioner received *Miranda* warnings.

In *Brecht v. Abrahamson*, 507 U.S. at 628, 113 S.Ct. 1710 (1993), the United States Supreme Court inculcated the Bench and Bar in this country:

IN *DOYLE V. OHIO*, 426 U.S. at 619, 96 S.Ct. at 2245, WE HELD THAT "THE USE FOR IMPEACHMENT PURPOSES OF [A DEFENDANT'S]SILENCE, AT THE TIME OF ARREST AND AFTER RECEIVING MIRANDA WARNINGS, VIOLATE[S] THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT." THIS RULE "RESTS ON THE 'FUNDAMENTAL UNFAIRNESS OF IMPLICITLY ASSURING A SUSPECT THAT HIS SILENCE WILL NOT BE USED AGAINST HIM AND THEN USING HIS SILENCE TO IMPEACH AN EXPLANATION SUBSEQUENTLY OFFERED AT TRIAL.' " *WAINWRIGHT V. GREENFIELD*, 474 U.S. 284, 291, 106 S.Ct. 634, 638, 88 L.Ed.2d 623 (1986) (quoting *SOUTH DAKOTA V. NEVILLE*, 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983)). THE "IMPLICIT ASSURANCE" UPON WHICH WE HAVE RELIED IN OUR DOYLE LINE OF CASES IS THE RIGHT–TO–REMAIN–SILENT COMPONENT OF MIRANDA. THUS, THE CONSTITUTION DOES NOT PROHIBIT THE USE FOR IMPEACHMENT PURPOSES OF A DEFENDANT'S SILENCE PRIOR TO ARREST, *JENKINS V. ANDERSON*, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980), OR AFTER ARREST IF NO MIRANDA WARNINGS ARE GIVEN, *FLETCHER V. WEIR*, 455 U.S. 603, 606–607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982) (*per curiam*). SUCH SILENCE IS PROBATIVE AND DOES NOT REST ON ANY IMPLIED ASSURANCE BY LAW ENFORCEMENT AUTHORITIES THAT IT WILL CARRY NO PENALTY. See 447 U.S. at 239, 100 S.Ct. at 2129.

*Id.* at 628, 113 S.Ct. 1710 (emphasis added). *See also Greer v. Miller*, 483 U.S. 756, 763, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (the *Miranda* warnings' implicit assurance provides "the prerequisite of a *Doyle* violation").

In a case setting the precedent for *Brecht*, the United States Supreme Court in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), guarded against the expansion of *Doyle*. The Supreme Court held that, in the absence of *Miranda* warnings, the state does not violate a defendant's due process by permitting cross-examination on post-arrest silence when a defendant takes the stand. *Fletcher*, 455 U.S. at 607, 102 S.Ct. 1309.

The defendant in *Fletcher* fatally stabbed a man during a fight in a nightclub parking lot. He left the scene immediately and did not report the incident to the police. At trial he took the stand and, for the first time, offered the exculpatory statement that the stabbing was in self-defense and accidental. Nothing in the record indicated that the police had read Fletcher his *Miranda* warnings immediately after arrest. The prosecutor cross-examined him as to why he failed to offer his self-defense explanation to police.

On appeal, the Court of Appeals for the Sixth Circuit found an arrest in itself was sufficient governmental action to trigger a defendant's right to remain silent. *Weir v. Fletcher*, 658 F.2d 1126, 1131 (1981). They opined "impeachment of a defendant with post-arrest silence is forbidden by the Constitution, regardless whether *Miranda* warnings are given." *Id.* at 1130. The Supreme Court reacted to this specific assertion stating, "[b]ecause we think the Court of Appeals gave an overly broad reading to our decision in *Doyle v. Ohio* . . . we reverse its judgment." *Fletcher*, 455 U.S. at 604, 102 S.Ct. 1309. The Court explicated:

> In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.

*Id.* at 607, 102 S.Ct. 1309.

In *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), Brecht shot and killed his brother-in-law

in Wisconsin and immediately left the scene in his sister's car. He crashed the car in a nearby town and told an officer who stopped to help that his sister had already arranged for a tow truck. Brecht then hitchhiked to Minnesota where he was apprehended. He was returned to Wisconsin and given the *Miranda* warnings.

Brecht took the stand at his first-degree murder trial and testified the shooting was accidental. The State disputed the defense on the basis that he did not seek help for his brother-in-law, fled the scene, and lied to the officer who stopped to help with the wrecked car. The State highlighted Brecht's failure to tell this account to the first officer, the man who gave him a ride, and the arresting officers. Over defense counsel's objections, the State asked Brecht if he had told anyone at any time prior to trial that the shooting was an accident. Brecht answered that he had not. The State made several references to Brecht's silence in the closing argument. Brecht was convicted and sentenced to life imprisonment.

On appeal, the Wisconsin Court of Appeals found the State's references to Brecht's post-*Miranda* silence violated *Doyle* and were so prejudicial as to warrant reversal. The Wisconsin Supreme Court found the *Doyle* violation harmless and reinstated the conviction. Brecht then sought *habeas corpus.* The District Court set aside the conviction on the basis the *Doyle* violation was not harmless error. Next, the Court of Appeals for the Seventh Circuit reversed having taken issue with the appropriate harmless error standard for federal habeas review. The United States Supreme Court granted *certiorari* to establish the proper harmless-error standard but first analyzed whether the State's cross-examination of Brecht was improper. The Court agreed the State violated *Doyle.* *Brecht,* 507 U.S. at 628–29, 113 S.Ct. 1710.

The Court noted that Brecht did not claim the shooting was accidental until he testified at trial. The Court stated "[i]t was entirely proper-and probative-for the State to impeach his testimony by pointing out that petitioner had failed to tell anyone *before the time he received his Miranda warnings* at his arraignment about the shooting being an accident." *Id.* (emphasis added). In contrariety, the Court expounded:

> The State's references to [Brecht's] silence after that point in time, or more generally to [Brecht's] failure to come forward with his version of events at any time before trial ... crossed the *Doyle* line. For it is conceivable that, once petitioner had been given his *Miranda* warnings, he decided to stand on his right to remain silent because he believed his silence would not be used against him at trial.

*Id.*

South Carolina courts have recognized *"Doyle* holds that the Due Process Clause prohibits the government from commenting on an accused's post-*Miranda* silence." *State v. Simmons,* 360 S.C. 33, 39, 599 S.E.2d 448, 450 (2004).

Relying on *Brecht,* this court in *State v. Holliday,* 333 S.C. 332, 509 S.E.2d 280 (Ct.App.1998), found the State committed a *Doyle* violation for referring to a defendant's silence both before and after receiving the *Miranda* warnings. Brothers Jeremy and Aaron Holliday were convicted of carjacking and resisting arrest among other charges after unsuccessfully attempting to steal a car. The morning after their arrest, the magistrate read the *Miranda* warnings at a bond hearing and asked both if they had anything to say. Jeremy confessed he was trying to steal the car. Aaron made no statement. At trial, he offered, for the first time, an exculpatory explanation.

During an *in camera Jackson v. Denno hearing,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the trial court held that Aaron's silence was inadmissible. Nonetheless, over defense counsel's objections, the solicitor's cross-examination repeatedly referred to Aaron's failure to tell anyone this version of events. On appeal, this court noted "some of the solicitor's questions dealt with Aaron's failure to tell his story to anyone before he received his *Miranda* warnings, [but] other questions ... clearly implicate the time period following the *Miranda* warnings.... Therefore, the solicitor's questions referencing Aaron's silence violated the *Doyle* rule." *Holliday,* 333 S.C. at 341, 509 S.E.2d at 284. "In light of the Supreme Court's application of *Doyle* in *Brecht,* we find the solicitor's questions in this case improper." *Id.* at 343, 509 S.E.2d at 285.

In *State v. McIntosh,* 358 S.C. 432, 443, 595 S.E.2d 484, 490 (2004), our supreme court analyzed *Doyle* to find a prosecutor

had improperly commented on a defendant's silence, but clarified:

> The State may point out a defendant's silence prior to arrest, or his silence after arrest but prior to the giving of *Miranda* warnings, in order to impeach the defendant's testimony at trial. Due process is not violated because '[s]uch silence is probative and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty.' *Brecht v. Abrahamson*, 507 U.S. 619, 628, 113 S.Ct. 1710, 1716, 123 L.Ed.2d 353, 366 (1993); *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).

This court affirmed convictions in *State v. Bell*, 347 S.C. 267, 554 S.E.2d 435 (2001), despite the prosecutor's comments on the defendant's post-arrest silence. As with the case at bar, the record in *Bell* did not indicate the defendant ever received the *Miranda* warnings, and we refused to presume they had been given at the time of arrest.

Bell was charged with possession of crack cocaine and possession with intent to distribute crack cocaine, but she was not arrested for one week after the drugs were found in her home. At trial, Bell took the stand and alleged the drugs belonged to her boyfriend. During cross-examination, the prosecutor asked how the police responded to the story. She answered that the police had never asked and she had never told. Defense counsel's subsequent objection was sustained, and the trial judge issued a curative order. The prosecutor then suggested she had never told her family this story. Again, defense counsel objected and the judge overruled. Bell moved for a mistrial arguing the trial court erred in permitting the State to comment on her post-arrest silence. The motion was denied.

On appeal, we found no evidence the *Miranda* warnings were given; thus, we found no violation of Bell's right to due process. In arriving at this decision, we recognized that *Doyle* is only applicable after *Miranda* warnings have been given. *Bell*, 347 S.C. at 269–70, 554 S.E.2d at 436. Next, we acknowledged that the United States Supreme Court distinguished *Fletcher* from *Doyle* because no *Miranda* warnings were given to Fletcher. *Id.* at 270, 554 S.E.2d at 436–37.

Lastly, we revisited *Brecht* for the Supreme Court's reiteration that the *Doyle* rule is based on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using the silence to impeach him at trial. *Id.* at 270–71, 554 S.E.2d at 437. Applying *Doyle* and its progeny, we ruled:

> [T]here is no evidence in the record that Bell ever received *Miranda* warnings, and we will not presume the warnings were given at the time of arrest. *See United States v. Cummiskey,* 728 F.2d 200, 205 (3rd Cir.1984) ("Although nothing in the [*Fletcher*] record indicated the time *Miranda* warnings were given, the Supreme Court did not presume that the warnings were given at the time of arrest. Accordingly, we do not believe that we are authorized to engage in such a presumption." (citation omitted)). Although there was testimony that Bell was arrested approximately one week after the search of her apartment, her arrest alone is insufficient to implicitly induce Bell to remain silent. *See Fletcher,* 455 U.S. at 603, 102 S.Ct. at 1309. Therefore, we find no due process violation occurred as a result of the State's cross-examination of Bell.

*Id.* at 271, 554 S.E.2d at 437. *Cf. State v. Weston,* 367 S.C. 279, 625 S.E.2d 641 (2006) (holding *Doyle* inapplicable to defendant's statement made to a friend prior to arrest and prior to *Miranda* warnings); *State v. Hill,* 360 S.C. 13, 16, 598 S.E.2d 732, 733 (Ct.App.2004) (cross-examining defendant on post-arrest, post-*Miranda* silence permissible where defendant gives exculpatory testimony and alleges to have told police same version on arrest); *State v. Kimsey,* 320 S.C. 344, 346, 465 S.E.2d 128, 130 (Ct.App.1995) (finding where defendant confesses one story to the police then "gives a different version of his involvement in the offense at trial, *Doyle* does not apply").

In the case at bar, there is no evidence in the record that Brown ever received the *Miranda* warnings. The investigating officer testified about his investigation of the crime and his activities in speaking with eyewitnesses. However, there was no testimony recounting conversations with Brown nor did the officer indicate whether Brown received *Miranda* warnings upon his arrest. A signed waiver of rights form was not introduced by the solicitor, nor did Brown introduce evidence

of such a form at the PCR hearing. Therefore, Brown did not meet his burden of proving the solicitor committed a *Doyle* violation and that trial counsel erred in failing to object. *See, e.g., State v. Mitchell,* 330 S.C. 189, 194, 498 S.E.2d 642, 645 (1998) (appellant has burden to provide a sufficient record for review).

Incontrovertibly, the evidentiary record extant in the case *sub judice* demonstrates that no *Doyle* violation occurred because Petitioner was **NOT** advised on his *Miranda* warnings.

## III. *INEFFECTIVE ASSISTANCE OF COUNSEL*

To establish a claim of ineffective assistance of counsel in this proceeding, Brown must prove (1) that counsel failed to render reasonably effective assistance under prevailing professional norms; and (2) that the deficient performance prejudiced his case. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Edmond v. State,* 341 S.C. 340, 534 S.E.2d 682 (2000).

Brown claimed that his counsel was deficient in failing to object to the solicitor's comments on his silence during cross-examination and in closing argument. He asserted that, because the trial came down to his word versus the testimony of the eight eyewitnesses, the outcome relied on his credibility.

### a. TRIAL STRATEGY

"[W]here counsel articulates a valid reason for employing a certain strategy, such conduct will not be deemed ineffective assistance of counsel." *Watson v. State,* 370 S.C. 68, 72, 634 S.E.2d 642, 644 (2006). *Dempsey v. State,* 363 S.C. 365, 610 S.E.2d 812 (2005); *Stokes v. State,* 308 S.C. 546, 419 S.E.2d 778 (1992). Counsel's strategy will be reviewed under "an objective standard of reasonableness." *Ingle v. State,* 348 S.C. 467, 470, 560 S.E.2d 401, 402 (2002).

In *Stokes v. State,* 308 S.C. 546, 419 S.E.2d 778 (1992), the petitioner, who was convicted of murdering her husband, alleged she had received ineffective assistance of counsel because witnesses were not called who could possibly have supported her suicide defense. Our supreme court affirmed her conviction and stated "[i]f there is any probative evidence

in the record to support the PCR judge's decision, his ruling must be affirmed. Where, as here, counsel articulates a valid reason for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel." *Id.* at 548, 419 S.E.2d at 779 (citations omitted). Counsel reported he only called those witnesses who were believable. He interviewed other witnesses but found they lacked credibility.

The petitioner in *Drayton v. Evatt,* 312 S.C. 4, 430 S.E.2d 517 (1993), had been sentenced to death for murder, armed robbery, and kidnapping. In his PCR petition he alleged ineffective assistance of counsel, but our supreme court found the trial strategies reasonable. Defense counsel did not present evidence of the petitioner's future adaptability to prison. Counsel testified to do so would have required introduction of unfavorable psychiatric and disciplinary reports from the petitioner's detention as a juvenile and incarceration as an adult. Counsel did not develop testimony that the petitioner knew the victim believing this would impact negatively with the jury. Lastly, defense counsel's statement's during the sentencing phase admitting the petitioner was, *inter alia,* "far down the rung of society" was an appeal to the jury's sense of mercy. *Id.* at 13, 430 S.E.2d at 522.

In *Caprood v. State,* 338 S.C. 103, 525 S.E.2d 514 (2000), a petitioner seeking PCR after an armed robbery conviction alleged trial counsel's numerous errors amounted to ineffective assistance. Our supreme court affirmed that counsel had articulated valid trial strategies. Counsel believed requesting curative instructions brings into focus the item kept out. *Id.* at 110, 525 S.E.2d at 517. Defense counsel introduced a detective's report with a description of the robber, but he articulated he did so to show the differences between the report and witness testimony. *Id.*

In *Rhodes v. State,* 349 S.C. 25, 561 S.E.2d 606 (2002), an assault victim's friend testified that he gave the victim a school yearbook with the defendant's picture in it because he heard a rumor the petitioner was involved in the crime. The victim subsequently identified the petitioner from the yearbook. On appeal to the PCR judge, the petitioner alleged his counsel was ineffective for not objecting to this hearsay testimony. Although our supreme court disagreed that the testimony was

hearsay, they concluded counsel offered a valid strategy in that he used the testimony to reinforce the notion that the identification was founded in rumor and innuendo. *Id.* at 33, 561 S.E.2d at 610.

Counsel was found deficient in *Gilchrist v. State*, 350 S.C. 221, 565 S.E.2d 281 (2002), for the failure to object to the state's vouching for the credibility of a key witness. At the PCR hearing, counsel explained he "thought seriously about making a mistrial motion and objection to all of that at the time. However, based upon the strategy of the case, [he] decided not to." *Id.* at 226, 565 S.E.2d at 284. No further explanation was given. Our supreme court noted "counsel never articulated any strategy at all. A blanket statement by counsel at a PCR hearing that he employed 'strategy' does not automatically insulate the lawyer from being found ineffective." *Id.* at 228, 565 S.E.2d at 284 n. 2.

In *Sanchez v. State*, 351 S.C. 270, 569 S.E.2d 363 (2002), the defendant appealed his criminal sexual conduct conviction. Our supreme court held representation was ineffective because of counsel's failure to object to a police officer's hearsay testimony about the six year old victim's demonstration of the assault using an anatomically correct doll. Trial counsel felt the testimony would be useful to show the accusations were vague. *Id.* at 274, 569 S.E.2d at 365. However, this strategy was deemed unreasonable as the hearsay corroborated the victim's testimony at trial. *Id.* at 276, 569 S.E.2d at 366.

Our supreme court affirmed a petitioner's convictions for trafficking cocaine and possession of cocaine in *McLaughlin v. State*, 352 S.C. 476, 575 S.E.2d 841 (2003). Defense counsel was not ineffective for failing to preserve for appeal the trial court's refusal to allow cross-examination of the state's chemist regarding his own drug arrest. The trial judge decided defense counsel could inquire whether the chemist was under the influence of drugs while testing the cocaine evidence in this case, but he could not inquire into the chemist's arrest. Defense counsel chose not to ask the permitted questions at all. Counsel explained that, without being able to inquire about the chemist's arrest, asking only the permitted questions would not have advanced the petitioner's case. In addition to finding defense counsel had proffered the ques-

tions, our supreme court held "counsel gave a valid reason for consciously deciding not to ask those questions." *Id.* at 483, 575 S.E.2d at 845.

In *Ellenburg v. State,* 367 S.C. 66, 625 S.E.2d 224 (2006), Ellenburg alleged his defense counsel was ineffective for failing to object to the solicitor's comments made during closing argument. At his trial for safecracking and second degree burglary, an accomplice testified to his version of events. Defense counsel argued in closing that the story was a half truth told to avoid being subjected to a polygraph machine by the police. The solicitor responded by asking why the accomplice would lie when faced with the prospect of taking a lie detector test. Our supreme court held defense counsel's mention of the polygraph test was "a reasonable way to cast doubt on [the accomplice's] testimony implicating [Ellenburg]." *Id.* at 69, 625 S.E.2d at 226. Additionally, because the defense opened the door to the polygraph issue, the solicitor's statement in closing was not improper. *Id.*

In *Watson v. State,* 370 S.C. 68, 634 S.E.2d 642 (2006), our supreme court disagreed with the PCR court that defense counsel was ineffective for failing to object to certain hearsay testimony introduced in a criminal sexual conduct trial. Counsel had reasonable strategy because she felt an objection would likely lead to the more damaging introduction of a videotape of the child victim talking about the abuse. *Id.* at 73, 634 S.E.2d at 644.

Our supreme court in *Ard v. Catoe,* 372 S.C. 318, 642 S.E.2d 590 (2007), found defense counsel ineffective for not more fully investigating and challenging gunshot residue when such evidence was crucial to the outcome of the case. Specifically, defense counsel's decision to not cross-examine the State's gunshot residue expert and instead focusing on the manner in which evidence was collected was not an objectively reasonable strategy.

■ In the case *sub judice,* the PCR judge's finding that Brown's counsel did not render ineffective assistance was based on counsel's articulation of valid trial strategies. Testimony from Brown's counsel at the post-conviction relief hearing revealed it was not his strategy to object to all issues generated in a trial because he felt doing so creates a negative

impression with the jury. Additionally, counsel testified the State's evidence made this as strong a case as he had seen. He believed the best strategy was to highlight for the jury the discrepancies between the eyewitnesses' testimony and hope they would find it dubious.

It is manifest and irrefutable that trial counsel was *NOT* ineffective. Apodictically, there was no legal or factual basis for an objection bottomed and premised on *Doyle*. Trial counsel conducted a salutary and salubrious representation of Brown.

### b. PREJUDICE

The PCR court found that even if there were a failure to object, Brown failed to establish prejudice. We decline to address this issue because of our disposition of Issues I and II.

### CONCLUSION

We hold that trial counsel was not ineffective for failing to make certain objections because the record does not show a *Doyle* violation occurred. Furthermore, we do *NOT* address the issue of prejudice because of our ruling on the *Doyle* issue. Accordingly, Brown's conviction and sentence are

**AFFIRMED.**

KITTREDGE, J., concurs.

HEARN, C.J., concurs in result only in a separate opinion.

HEARN, C.J., concurring in a separate opinion:

I concur in the result reached by the majority, but would simply dismiss the writ of certiorari as improvidently granted.