575 S.E.2d 841

**Kevin McLAUGHLIN, Respondent,**

**v.**

**STATE of South Carolina, Petitioner.**

**No. 25576.**

Supreme Court of South Carolina.

Submitted Dec. 5, 2002.

Decided Jan. 13, 2003.

---

**3.** Austin's remaining pleas and sentences are unaffected.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General B. Allen Bullard, Jr., and Assistant Attorney General Elizabeth R. McMahon, all of Columbia, for petitioner.

Richard J. Breibart, of Breibart, McCauley & Newton, P.A., of Lexington, for respondent.

Justice MOORE:

We granted the State's petition for a writ of certiorari to determine whether the post-conviction relief (PCR) court erred by granting respondent relief. We reverse.

## FACTS

Respondent was convicted of trafficking in cocaine, possession with intent to distribute (PWID) cocaine, and two counts of PWID cocaine within proximity of a school. He was sentenced to twenty-five years imprisonment for trafficking, fifteen years concurrent for PWID cocaine, and ten years concurrent for each count of PWID within proximity of a school. His convictions and sentences were affirmed on direct appeal. *State v. McLaughlin,* 307 S.C. 19, 413 S.E.2d 819 (1992).

## ISSUE I

Whether the PCR court erred by finding respondent was incompetent to stand trial?

## DISCUSSION

■ The State argues the PCR court erred by finding respondent was incompetent to stand trial due to the effects of his anti-seizure medication, Dilantin.

While respondent chose not to testify at his PCR hearing, his father (Father) and sister (Sister) testified that respondent's health problems began when he was a teenager. They testified respondent acted strangely, had migraine headaches, mood swings, and was depressed. Father did not attend the trial, but he testified that, prior to trial, respondent was acting strangely. He indicated he had spoken with respondent's counsel about respondent's problems.

Shortly before respondent was arrested, Sister stated he began taking Dilantin, which made him depressed, disoriented, confused, and caused mood swings. Sister indicated she was present with respondent before and during the trial, and that respondent acted strangely and had mood swings. Sister testified respondent did not have any problems communicating with counsel during trial. However, she indicated respondent did not understand counsel when counsel attempted to discuss the terms of an offered plea agreement.

Nancy Culbertson, a pharmacist, testified on respondent's behalf at the PCR hearing. She testified the side effects of

taking Dilantin include confusion, mood and mental changes, cognitive impairment, depression, and mental incompetency.

Culbertson indicated she had reviewed respondent's medical records from the Department of Corrections. From the review, she determined respondent exhibited various physical side effects after taking Dilantin. Culbertson testified that respondent's taking of Dilantin could have affected his ability to make rational decisions. She felt that, from reading the trial testimony, respondent could not adequately handle his day-to-day affairs. However, she testified that she could not tell whether respondent was in fact taking Dilantin at the time of trial.[1] Further, on cross-examination, Culbertson admitted she was not qualified to examine someone to determine if that person was competent to stand trial and she admitted she did not know the standard for determining whether someone is competent to stand trial.

From our review of respondent's trial testimony, respondent clearly understood the questions he was asked and responded to the questions in an appropriate manner. At no time did respondent indicate he did not understand what counsel was asking him.

Respondent's trial counsel testified that he had no trouble communicating with respondent. As a result of knowing that respondent was taking Dilantin and had been treated for seizures, counsel had him evaluated before trial by a forensic psychiatrist to determine his competency. The psychiatrist did not find any indications that respondent was incompetent. In an effort to provide mitigation in sentencing, counsel informed the trial court that, according to respondent's evaluation, respondent's medical conditions did not interfere with his mental state.

The PCR court found respondent incompetent at the time of trial, and stated "it is clear that [respondent], *at the time of his trial* was mentally impaired because of his seizure condition; his medication and its adverse effects." (Emphasis in original).

---

1. The Department's records begin almost a week after respondent's trial was completed. From our review of the records, it appears from 1990 to 1996 respondent would often fail to take his medicine.

Due process prohibits the conviction of a person who is mentally incompetent. *Jeter v. State*, 308 S.C. 230, 417 S.E.2d 594 (1992). The test for competency to stand trial or continue trial is whether the defendant has the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as a factual, understanding of the proceedings against him. *State v. Kelly*, 331 S.C. 132, 502 S.E.2d 99 (1998), *cert. denied*, 525 U.S. 1077, 119 S.Ct. 816, 142 L.Ed.2d 675 (1999). The defendant bears the burden of proving his incompetence by a preponderance of the evidence. *Id.*

The evidence does not suggest that respondent was incompetent before or during his trial. As noted previously, the pharmacist was not qualified to determine competency and did not know the standard for determining competency to stand trial. The pharmacist also could not determine from the records in her possession whether respondent was even taking the medicine at the time of his trial.

Additionally, the Department of Corrections' medical records are of little probative value because they commence after the completion of respondent's trial and they do not directly relate to respondent's ability to consult with his counsel or to understand the proceedings. Further, none of the physical side effects respondent appeared to exhibit from Dilantin during his time in prison would seem to have any effect on his capacity to understand counsel or the trial proceedings.

From counsel's PCR testimony that he had no trouble communicating with respondent and from a review of respondent's trial testimony, it is clear respondent had the ability to "consult with his lawyer with a reasonable degree of rational understanding." *See State v. Kelly, supra.* During his trial testimony, respondent answered his counsel's questions, and those of the prosecution, clearly and appropriately.

Further, given the fact a forensic psychiatrist evaluated respondent prior to trial and found that his medical conditions did not affect his mental state, the PCR court erred by granting respondent relief on this ground. We reverse the PCR court's decision granting respondent relief on the basis he was not competent at the time of trial. *See Gilchrist v. State*, 350 S.C. 221, 565 S.E.2d 281 (2002) (Court will not

uphold PCR court's findings if no probative evidence supports those findings).

## ISSUE II

Whether the PCR court erred by finding counsel ineffective for failing to preserve for appeal the trial court's refusal to allow counsel to cross-examine the SLED chemist regarding his drug arrest?

## DISCUSSION

At trial, the State offered the testimony of a former SLED chemist to testify that the substance found in respondent's possession was cocaine and to state the weight of that cocaine. After the State presented the chemist's qualifications, counsel voir dired the witness outside the jury's presence. He immediately began questioning the chemist regarding his arrest the Friday before the trial began.

The chemist testified he was arrested for possession of cocaine and misconduct in office. When asked specific details about his arrest, the chemist declined to answer. He also refused to answer whether he had ever analyzed drugs while under the influence of cocaine during his tenure at SLED.

Counsel requested that he be allowed to ask the chemist questions regarding his arrest in the jury's presence because the arrest affected whether the chemist was qualified to be an expert in the case. The trial court found the chemist's arrest did not affect his qualifications as a chemist, and subsequently ruled the chemist was qualified as an expert. The trial court also refused to allow counsel to cross-examine the chemist regarding his arrest. However, the court allowed counsel to ask the chemist whether he was impaired at the time of the cocaine testing and whether the test on the cocaine in respondent's case was compromised by the chemist's use of cocaine.

On cross-examination of the chemist, counsel did not ask the permitted questions. Following cross-examination, the trial court made it clear on the record that counsel had chosen not to ask the permitted questions. Counsel indicated he had proffered the questions he proposed to ask. In light of the court's ruling on that proffer, counsel stated he decided that to ask only the allowed questions would be unwise because it would isolate the testimony with respect to the test and would

not have the same effect as if he were also allowed to ask questions about the chemist's arrest.

■ On direct appeal, respondent appealed the trial court's limitations on cross-examining the chemist. We ruled the issue was not properly preserved for review on appeal. *State v. McLaughlin, supra.*[2]

At the PCR hearing, trial counsel was questioned regarding his failure to cross-examine the chemist regarding his drug use. Counsel stated that once the trial court limited the questions he could ask of the chemist, he felt that to ask the permitted questions would not have advanced the case. Counsel thought the fact the chemist had an unrelated charge for cocaine possession would not have necessarily helped respondent, but it was something he would have liked to have explored.

The PCR court held counsel should have made a proffer and asked the permitted questions. The court stated that if the issue had been properly preserved, it would have resulted in a new trial.

■ To prove counsel was ineffective, a PCR applicant must show counsel's performance was deficient and the deficient performance caused prejudice to the applicant's case. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, the applicant must show that, but for counsel's errors, there is a reasonable probability the result of the trial would have been different. *Johnson v. State,* 325 S.C. 182, 480 S.E.2d 733 (1997). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland, supra.*

We find counsel was not deficient for failing to make a proffer because counsel in fact made a proffer. We further find counsel was not deficient for failing to ask the specific questions allowed by the trial court. Counsel gave a valid reason for consciously deciding not to ask those questions. *See Whitehead v. State,* 308 S.C. 119, 417 S.E.2d 529 (1992) (if

---

2. Because this issue was found to be unpreserved on direct appeal, respondent may raise this issue in his PCR proceeding. *See Foye v. State,* 335 S.C. 586, 518 S.E.2d 265 (1999), *cert. denied,* 529 U.S. 1072, 120 S.Ct. 1685, 146 L.Ed.2d 492 (2000) (issue raised on direct appeal but disposed of on ground unpreserved may be raised in PCR proceeding).

counsel articulates valid reason for employing certain trial strategy, such tactics will not be deemed ineffective assistance of counsel). Counsel stated that to ask the questions regarding whether the chemist was impaired while performing the test on the cocaine or whether the test on the cocaine was compromised by the chemist's use of cocaine would not have greatly aided respondent's defense unless he could have laid the foundation for those questions by placing the chemist's arrest before the jury.

Moreover, respondent has not shown that there is a reasonable probability the result of his trial would have been different. If counsel had asked the questions before the jury,[3] it is unlikely these responses would have garnered respondent a verdict of not guilty. While the responses could have affected the credibility of the chemist in the eyes of the jury, respondent has not met his burden of proving that he would have been granted a new trial on appeal, but for trial counsel's alleged deficient performance.

Accordingly, we find the PCR court erred by granting respondent relief on the ground counsel was ineffective for failing to preserve for appeal the trial court's limitations on cross-examining the chemist.

### ISSUES III and IV

Whether the PCR court erred by finding counsel ineffective for failing to properly preserve for appeal issues regarding an alleged *Doyle*[4] violation and a juror's dismissal?

### DISCUSSION

 The State argues the PCR court erred by finding counsel ineffective for failing to properly preserve for appeal issues regarding an alleged *Doyle* violation and a juror's dismissal. We agree.

These issues were previously addressed on the merits in respondent's direct appeal. *State v. McLaughlin, supra.* We

---

3. It is extremely unlikely the chemist would have answered the questions at all when, during the proffer, he refused to answer similar questions based on the advice of counsel.

4. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (Due Process Clause of Fourteenth Amendment prohibits impeachment on basis of defendant's silence following Miranda warnings).

affirmed respondent's convictions on the *Doyle* issue by citing *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements of accused). We affirmed his convictions on the juror dismissal issue by citing *State v. Caldwell,* 300 S.C. 494, 388 S.E.2d 816 (1990) (juror competency is within discretion of trial judge); *State v. Dawkins,* 297 S.C. 386, 377 S.E.2d 298 (1989) (whether to grant motion for mistrial is within trial court's discretion); and *State v. Prince,* 279 S.C. 30, 301 S.E.2d 471 (1983) (mistrial should not be granted except in cases of manifest necessity). Accordingly, the merits of these issues have already been determined in respondent's direct appeal and the PCR court erred by granting respondent relief on these grounds. *Cf. Foye v. State, supra* (issue raised on direct appeal but disposed of on ground unpreserved may be raised in PCR proceeding).

## CONCLUSION

We find the PCR court erred by granting respondent relief and, as a result, the court's decision is

**REVERSED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.