746 S.E.2d 41

**Gregory McHAM, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**Appellate Case No. 2010–157966.**

**No. 27287.**

Supreme Court of South Carolina.

Submitted Feb. 1, 2013.

Decided July 17, 2013.

466

468

Appellate Defender Kathrine Haggard Hudgins, of South Commission on Indigent Defense, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Chief Deputy, Attorney General John W. McIntosh, Assistant Deputy, Attorney General Salley W. Elliott, and Assistant, Attorney General Suzanne Hollifield White, all of Columbia, for Respondent.

Justice BEATTY.

We granted certiorari to review the denial of Gregory McHam's application for post-conviction relief (PCR). McHam contends he received ineffective assistance of trial counsel because counsel failed to renew an *in limine* motion to suppress drug evidence. McHam asserts his Fourth Amendment rights were violated when an officer at a traffic checkpoint opened the passenger's side door of the vehicle he was driving, which revealed a package of crack cocaine inside the car and led to the discovery of additional drug evidence. The State contends counsel was not ineffective and the officer's action was justified by concerns for officer safety. We affirm as modified.

## I. FACTS

### A. Trial Proceedings & Direct Appeal

This case arose out of a stop at a traffic safety checkpoint conducted on May 22, 2002 by the South Carolina Highway Patrol. The checkpoint was at Powell Mill Road near U.S. Highway 29 in Spartanburg County. Three officers were present with marked patrol cars. McHam was driving a 1984 Ford Thunderbird when he was stopped at the checkpoint along with his passenger, Kobe Carter, at around 10:50 p.m. The car was making noises, and McHam's brakes were squealing due to mechanical problems as he stopped. Neither of the occupants was wearing a seat belt.

Trooper James Scott Crawford approached McHam and asked for his driver's license, registration, and proof of insurance. McHam provided his driver's license, but he and the passenger then began looking in various locations in the vehicle for the registration and insurance. According to Crawford, he thought "[t]hey were making a lot of movements

in the car that [he] didn't feel was consistent [with] looking for a registration card or a proof of insurance," so he walked around to the other side "to make sure they weren't accessing a weapon or anything like that." Once he got around to the passenger's side, the officer could not see their hands clearly because it was dark out and there wasn't much artificial lighting, so "for [his own] safety he opened up the door to watch what they were doing while they were going through the car."

As soon as Crawford opened the door, he saw "a baggy of crack that was situated ... between the seat and the passenger's door." At first he pretended not to see it, and he used his radio to summon another trooper. When the second trooper, Stephen J. Sulligan, came over, Crawford grabbed the crack, reached in and shut the car off and took the keys, and then arrested the passenger. A third trooper, Jeff Bradley, then arrived. The troopers searched under the car seats for weapons and noticed a grocery bag with cocaine. McHam was searched and a large amount of cash was found on his person. Marijuana and a small amount of cash were found on the passenger, and more cash was discovered in the car. A set of digital scales was found near the car during the arrest. McHam was ticketed for a seat belt violation and having faulty equipment on the vehicle, and he was charged with trafficking in cocaine and possession of crack cocaine with intent to distribute.

Trial counsel made an *in limine* motion at the start of the trial to suppress the drug evidence. Counsel argued that, while the officer had the authority to order the occupants to exit the vehicle and to review the requested documents, there was no articulable suspicion that they were involved in criminal activity, and the officer had no cause to open the car door. Counsel argued this was a routine traffic stop and if the officer had not opened the car door, the drugs would never have been found, so they should be suppressed as the product of an illegal search and seizure in violation of the Fourth Amendment.[1]

---

1. McHam and his passenger were tried together. Most of these arguments were articulated by the passenger's counsel, and McHam's counsel joined in the motion.

The trial court denied the suppression motion. The court found the initial traffic stop was made for a legitimate purpose, and the officer acted reasonably in opening the car door to enable him to see what the occupants were doing and to ensure his own safety during the traffic stop. The court noted that traffic stops, even when thought to be routine, were inherently dangerous, especially in the dark, and stated both sides had acknowledged the officer had the right to remove the defendants from the vehicle to ensure his own safety, so opening the door in order to better view the occupants did not constitute an unreasonable search and any seizure was not violative of a constitutional provision.

During the trial, McHam's counsel did not renew his Fourth Amendment objection, although he did object to some of the drug evidence based on the chain of custody. McHam was convicted of trafficking in cocaine and possession of crack cocaine. He was sentenced to concurrent prison terms of twenty-five years and ten years, respectively, and was fined for each offense.

McHam's counsel filed a direct appeal pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The *Anders* issue raised by counsel was whether the lower court erred in refusing to suppress the evidence that was seized as a result of an unlawful search of the vehicle McHam was driving. McHam's direct appeal was dismissed by the Court of Appeals after an *Anders* review. *State v. McHam*, 2005–UP–460 (S.C.Ct.App. filed July 26, 2005).

## B. PCR Proceedings

McHam subsequently filed this PCR matter alleging ineffective assistance of counsel. At the PCR hearing, McHam's PCR counsel contended trial counsel was ineffective for failing to contemporaneously object to the admission of the drug evidence based on an illegal search and seizure. PCR counsel maintained the officer's opening of the car door constituted an improper search leading to the illegal seizure of the drug evidence, and this evidence should have been suppressed. Counsel stated that, although trial counsel raised the Fourth Amendment issue in an *in limine* motion, he failed to preserve the issue for appeal as he did not renew his objection on this

basis when the drugs were actually admitted into evidence at trial. PCR counsel argued McHam was prejudiced because, if the issue had been preserved, it would have been considered on direct appeal, at which time an appellate court could have ruled the search was unlawful.

McHam presented the testimony of his trial counsel, who testified that he thoroughly investigated the search issue and thought he had a good chance of prevailing on the suppression motion. However, he conceded that he did not preserve the issue by objecting when the evidence came in at trial. He also acknowledged the suppression motion was the most critical part of McHam's trial.

The State, in contrast, asserted the opinion of the Court of Appeals did not appear to dismiss the *Anders* appeal on a procedural basis as it did not employ that language. Rather, the State maintained the Fourth Amendment issue was dismissed on the merits and, as a result, formed no basis for a PCR claim. In addition, the State reiterated its position that the officer did not violate the Fourth Amendment as his action was justified by concerns for officer safety.

The PCR judge denied McHam's application for relief and dismissed it with prejudice. The PCR judge found trial counsel's "representation on the suppression motion [ ] exceed[ed] the standard of reasonableness" and that he "was not ineffective for failing to prevail on the suppression motion." The PCR judge stated it appeared the Court of Appeals had reviewed the suppression issue submitted by McHam on direct appeal and "[t]he dismissal of the appeal appears to be on [the] merits rather than for a failure to preserve as suggested by [McHam]." The PCR judge further noted: "*Anders* review requires a review of the appeal to determine if any issue briefed has merit. In this case, the issue was raised and found to be without merit. Therefore, attorney error, if any, was harmless." The PCR judge concluded McHam had not demonstrated that his attorney failed to properly argue the motion to suppress or that the lack of an objection had led to the dismissal of his direct appeal.

## II. STANDARD OF REVIEW

On certiorari in PCR cases, the Court applies an "any evidence" standard of review. *Terry v. State*, 394 S.C.

62, 66, 714 S.E.2d 326, 328 (2011) (citing *Cherry v. State,* 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989)). "This Court will uphold the findings of the PCR judge when there is any evidence of probative value to support them," and it "will reverse the PCR judge's decision when it is controlled by an error of law." *Suber v. State,* 371 S.C. 554, 558–59, 640 S.E.2d 884, 886 (2007). This Court gives great deference to the PCR judge's findings of fact and conclusions of law. *Dempsey v. State,* 363 S.C. 365, 610 S.E.2d 812 (2005).

## III. LAW/ANALYSIS

McHam contends the PCR judge erred in ruling he did not receive ineffective assistance of counsel. He asserts the PCR judge erroneously assumed the Court of Appeals ruled on the merits of the unpreserved search issue when it conducted an *Anders* review. McHam argues that, although trial counsel made an *in limine* motion to suppress the drug evidence seized as a result of an illegal search, counsel was deficient because he failed to renew the objection when the drugs were admitted into evidence at trial, and this failure to preserve a meritorious issue prejudiced him.

In response, the State argues the PCR judge properly held counsel was not ineffective for failing to renew a pretrial suppression motion because the evidence was properly admitted at trial and McHam can show no prejudice from counsel's allegedly deficient performance. The State reiterates the PCR judge's finding that any attorney error was harmless because an *Anders* brief was submitted on McHam's behalf.

Alternatively, the State, quoting *State v. Lyles,* 381 S.C. 442, 444–45, 673 S.E.2d 811, 813 (2009), acknowledges that "a decision of the Court of Appeals dismissing an appeal after conducting a review pursuant to *Anders* is not a decision on the merits of the appeal, but simply reflects that the appellate court was unable to ascertain a non-frivolous issue which would require counsel to file a merits brief." The State asserts if the issue was not considered on the merits, McHam still did not show prejudice, as officer safety justified the officer's actions.

The United States Supreme Court has set forth a two-pronged test to establish ineffective assistance of counsel by

which a PCR applicant must show (1) counsel's performance was deficient, *and* (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Holden v. State*, 393 S.C. 565, 713 S.E.2d 611 (2011). The burden is on the PCR applicant to prove the allegations in his application. *Terry*, 394 S.C. at 66, 714 S.E.2d at 329.

### A. Deficient Performance

Although the PCR judge found trial counsel was not deficient, it is clear from the record that counsel did not object on Fourth Amendment grounds when the drug evidence was admitted at trial. At the PCR hearing, trial counsel was forthright in acknowledging that he failed to renew his objection. When asked if he objected to the drug evidence when it was introduced at trial, counsel admitted: "Going back through the transcript it doesn't look like I did object to or at least preserve my objection during the course of the trial." Counsel stated, "And if that were the case, and it wasn't preserved, then he would not have been able to argue the most critical piece of his trial, which was the . . . denial of the suppression motion." Counsel agreed with the characterization by McHam's PCR attorney that McHam "basically [ ] won or lost the case on that motion of suppression[.]" Contrary to the PCR judge's determination, we find counsel's failure to renew the Fourth Amendment objection constituted deficient performance that satisfies the first prong of the *Strickland* test. *See Butler v. State*, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985) ("The proper measure of counsel's performance remains whether he has provided representation within the range of competence required by attorneys in criminal cases.").

### B. Prejudice

The trial court further found that, even if trial counsel had been deficient, McHam was not prejudiced as the merits of the search issue were considered and rejected on direct appeal when the Court of Appeals conducted an *Anders* review.

Under the second prong of the analysis in *Strickland*, the PCR applicant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Id.*

■ Under the *Anders* procedure, an appellate court is required to review the entire record, including the complete trial transcript, for any *preserved* issues with potential merit. *See State v. Williams,* 305 S.C. 116, 117, 406 S.E.2d 357, 358 (1991) (Upon the receipt of an *Anders* brief and "the receipt of the *pro se* brief or the expiration of the period to file a *pro se* brief, this Court will then proceed to review the record as required by *Anders*. If no issue of arguable merit is discovered, the appeal will be dismissed and counsel's petition to be relieved will be granted. In the event the Court finds any issue(s) of arguable merit, the parties will be directed to submit new briefs."); *State v. Lawrence,* 349 S.C. 129, 130, 561 S.E.2d 633, 634 (Ct.App.2002) (stating "[a]fter a thorough review of the record in accordance with *Anders v. California* and *State v. Williams,* we find the only *preserved* issue at trial is whether the trial court erred in denying Lawrence's motion for a directed verdict on the charge of discharging a firearm into an occupied structure" (emphasis added) (footnotes omitted)).

This Court has previously held that an issue that was raised on direct appeal but found to be unpreserved may be raised in the context of a PCR claim alleging ineffective assistance of counsel. *McLaughlin v. State,* 352 S.C. 476, 575 S.E.2d 841 (2003); *Foye v. State,* 335 S.C. 586, 518 S.E.2d 265 (1999). Based on the foregoing, it is clear the Court of Appeals did not consider the merits of the Fourth Amendment issue because it was not preserved by trial counsel. To the extent the PCR judge concluded otherwise and based his finding of a lack of prejudice on this conclusion, he was in error.

Since the Fourth Amendment issue was not considered on direct appeal because it was unpreserved, an examination of the merits of the issue is appropriate in analyzing the prejudice prong in McHam's PCR claim. *See generally Sikes v. State,* 323 S.C. 28, 30, 448 S.E.2d 560, 562 (1994) ("When the defendant claims that counsel's failure to articulate a Fourth

Amendment claim was ineffective assistance, [the] defendant must show that such claim is *meritorious* and that the verdict would have been different absent the evidence that *should* have been excluded." (emphasis added)).

## Merits of Fourth Amendment Issue

The Fourth Amendment to the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures and provides that no warrants shall be issued except upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. amend. IV. "A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *State v. Wright,* 391 S.C. 436, 442, 706 S.E.2d 324, 327 (2011) (quoting *Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810, 116 S.Ct. 1769. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* (citing *Delaware v. Prouse,* 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) and *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). In addition, while detaining a vehicle at a traffic safety checkpoint constitutes a "seizure," where the checkpoint serves the public interest and does not impose an unreasonable restriction on one's liberty, it does not violate Fourth Amendment proscriptions. *Mich. Dep't of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); *State v. Vickery,* 399 S.C. 507, 732 S.E.2d 218 (Ct.App.2012).

McHam did not challenge the propriety of his initial stop, so the sole focus of our inquiry is on the validity of the officer's

opening of the passenger's side door of the vehicle McHam was driving. The parties agree that an officer may order the driver and any passengers to exit a detained vehicle without violating the Fourth Amendment. *See Mimms*, 434 U.S. at 109–10, 98 S.Ct. 330 (holding once a driver has been lawfully detained, the police may order the driver to exit the vehicle, even in the absence of unusual or suspicious behavior, without violating the Fourth Amendment's prohibition on unreasonable searches and seizures; the Court stated, "We think it too plain for argument that the State's proffered justification-the safety of the officer-is both legitimate and weighty," and it "specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile."); *Maryland v. Wilson*, 519 U.S. 408, 414–15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (extending the rule announced in *Mimms* and "hold[ing] that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop" because the "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car"); *State v. Banda*, 371 S.C. 245, 252–53, 639 S.E.2d 36, 40 (2006) (observing the police may order both the driver and the passenger out of a vehicle at a valid stop without violating the Fourth Amendment (citation omitted)).

In this case of first impression the Court is asked to decide whether an officer may open a car door, based on considerations of officer safety, during an otherwise valid traffic stop without violating the Fourth Amendment. Other jurisdictions that have considered the question under a variety of factual scenarios have found officer safety can be a valid justification for opening the door of an occupied vehicle. The analysis turns on a consideration of (1) whether the act constituted a search, and (2) whether any search was nevertheless justified under the Fourth Amendment.

### (1) Is it a Search?

 In our view, as to the first point, the officer's opening of the door of an occupied vehicle constituted a search.

In *State v. Schlosser*, 774 P.2d 1132, 1135–37 (Utah 1989), the court held that an officer who opened a car door to see

whether the passenger was "hiding something" was a search that exceeded the legitimate objectives of the traffic stop. Citing *Arizona v. Hicks*, 480 U.S. 321, 325, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), the court noted "even a small intrusion" can be an unlawful search under the Fourth Amendment. *Id.* at 1135. The court rejected the plain view doctrine, stating the doctrine requires the officer to be able to observe what is in open or plain view when he is located where he has a lawful right to be, while here the officer had opened the car door to view portions of the interior of the car *that he could not otherwise see.*[2] *Id.* at 1136.

The court relied upon the reasoning of the United States Supreme Court in *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986):

> In [*Class*, 475 U.S. at 114–15, 106 S.Ct. 960], the Supreme Court stated that "a car's interior as a whole is . . . subject to Fourth Amendment protection from unreasonable intrusions by the police." The Court held that an officer's opening the driver's door of an automobile to examine the vehicle identification number constituted a "search" and that the search was justified because the officer sought only to uncover the VIN, or vehicle identification number, a number required by state law to be located in a place ordinarily in plain view from outside the vehicle. 475 U.S. at 114, 119, 106 S.Ct. at 966, 969. The Court warned, however, that "[i]f the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it." 475 U.S. at 119, 106 S.Ct. at 969. Clearly, the State has no regulatory interest or justification in this case that is similar to the state's interest in *Class* to justify the intrusion into the passenger compartment.

2. *Cf. State v. Daniels*, 252 S.C. 591, 596–97, 167 S.E.2d 621, 623–24 (1969) (finding an officer investigating a robbery who looked in a vehicle's window and saw materials that appeared to be related to the robbery on the back seat did not engage in a "search" as the items were visible from a place where the officer had a right to be, and he had the duty and the right to seize them without a warrant; the Court stated "[a] seizure of what is in plain view, without a search . . . is not prohibited by either Constitution.' " (ellipsis in original) (citation omitted)).

*Schlosser*, 774 P.2d at 1135 (ellipsis and second alteration in original).[3] The court in *Schlosser* noted, however, that the officer "cited no safety concerns as the basis for his actions; he sought only to investigate the possibility that defendants were engaged in illegal activity, and for that reason he opened the passenger door." *Id.* at 1137.

In *Commonwealth v. O'Connor*, 21 Mass.App.Ct. 404, 487 N.E.2d 238, 239–40 (1986), the court held that the defendant's act of reaching below the dash after seeing the officer did not justify the officer stopping his cruiser and opening the door of the defendant's vehicle, which revealed the presence of cocaine. The court observed that, prior to opening the car door, "the officer made no attempt to question or communicate with the [defendant], nor does the record disclose that he was warranted in taking reasonable precautions for his safety." *Id.* (quoting *Commonwealth v. Podgurski*, 386 Mass. 385, 436 N.E.2d 150, 153 (1982). In *Podgurski*, the officer's act of sticking his head inside the slightly ajar sliding door of a windowless cargo van, whereupon he discovered the occupants bagging hashish, was deemed to constitute a search.) 436 N.E.2d at 152–53.

In *State v. Rhodes*, 315 Or. 191, 843 P.2d 927, 928 (1992) (en banc), the officer found the defendant slumped over in a vehicle with the engine running and the door open. After moving the door, the officer smelled alcohol and saw an empty beer can, leading to a charge of driving under the influence. The defendant argued that an officer's "conduct in further opening [the] pickup door (beyond the three or four inches it already was open) was a 'search'" and the evidence seen should be suppressed. *Id.* at 929–30. The court defined a "search" as "an intrusion by a governmental officer, agent, or employee into the protected privacy interest of an individual." *Id.* at 930. The court explained that the officer "physically grasped the vehicle's door and moved it, exposing the inside of

---

3. The Supreme Court in *Class* found the reasonableness of the intrusion should be measured by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. *Class*, 475 U.S. at 118, 106 S.Ct. 960. Thus, the occupants' expectations of privacy, which are less in a vehicle than one's home, should be balanced against the government's offered justification of officer safety. *See id.* at 112–13, 117–18.

the passenger compartment to a visual inspection of a scope and intensity that, so far as this record shows, could not have been made without opening the door." *Id.* "In other words [the officer's] action permitted him to observe and smell what he otherwise could not have seen or smelled from a lawful vantage point. That was a search." *Id.*

Although we are aware of contrary authority, we find the above reasoning to be persuasive and hold the opening of the door of an occupied vehicle is an intrusion, however slight, that generally constitutes a search for purposes of the Fourth Amendment. In such cases, a search results based on the fact that it enables the officer to observe portions of the interior of the vehicle that would not otherwise be readily visible to those who are outside the vehicle. *See id.*

### (2) Is the Search Justified by an Exception to the Warrant Requirement?

Having determined the officer's conduct constitutes a search, the next point for consideration is whether the search was, nevertheless, justified because "[t]he Fourth Amendment by its terms prohibits [only] 'unreasonable' searches and seizures." *Class,* 475 U.S. at 116, 106 S.Ct. 960.

"The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Mimms,* 434 U.S. at 108–09, 98 S.Ct. 330 (quoting *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Id.* at 109, 98 S.Ct. 330 (citation omitted).

"Warrantless searches and seizures are unreasonable absent a recognized exception to the warrant requirement." *State v. Wright,* 391 S.C. 436, 442, 706 S.E.2d 324, 327 (2011). These exceptions include the following: (1) search incident to a lawful arrest, (2) hot pursuit, (3) stop and frisk, (4) automobile exception, (5) the plain view doctrine, (6) consent, and (7) abandonment. *State v. Dupree,* 319 S.C. 454, 456–57, 462 S.E.2d 279, 281 (1995); *State v. Moore,* 377 S.C.

299, 309, 659 S.E.2d 256, 261 (Ct.App.2008); *see also Wright*, 391 S.C. at 444, 706 S.E.2d at 327–28 (discussing an exception for exigent circumstances); *State v. Herring*, 387 S.C. 201, 210, 692 S.E.2d 490, 494–95 (2009) (same).

■ Governmental interest in officer safety has been recognized to be a substantial one, and we hold as a general principle that officer safety can justify the opening of a door to an occupied vehicle under reasonable circumstances. *See Mimms*, 434 U.S. at 110, 98 S.Ct. 330 (observing the governmental interest in officer safety during a traffic stop is substantial); *State v. Brake*, 103 P.3d 699, 704–05 (Utah 2004) (stating there is "a well-developed body of law which recognizes the inherent dangers of traffic encounters and responds to those dangers by permitting law enforcement officers to take measures to protect their safety without risk of violating constitutional protections"; "the court further stated [t]he inherent danger in traffic stops does not, however, justify the warrantless search of the interior of a vehicle," and "a warrantless automobile search requires probable cause and exigent circumstances unless it satisfies *traditionally recognized justifications of protecting the safety of police* or the public or preventing the destruction of evidence" (emphasis added)).

■ In the current appeal, the officer observed McHam and his passenger make what he described as unusual movements in areas where he did not think a person would normally look for registration or insurance papers, and he testified that he wanted to be able to see the hands of the occupants for his own safety, in case they had weapons. Although no weapons were ultimately found in the car, when viewed at the time of the officer's confrontation, we believe the evidence supports a determination that officer safety was a legitimate concern, given the dimly-lit conditions at the scene of the stop, the presence of more than one occupant in the vehicle, the fact that the officer was the only one approaching the vehicle at that moment, and the actions of the occupants.

Based on the foregoing, we find that, even if trial counsel had renewed his motion in order to preserve the issue,

McHam has not shown there is a reasonable probability that the outcome of the trial would have been different because his Fourth Amendment claim fails on its merits. Under these circumstances, McHam has not established the requisite prejudice to support his claim of ineffective assistance of counsel. *See generally Foye v. State*, 335 S.C. 586, 518 S.E.2d 265 (1999) (holding PCR was properly denied where the applicant did not prove he was prejudiced by trial counsel's deficient performance in failing to preserve an issue at trial).

## IV. CONCLUSION

We hold the PCR judge erred in finding counsel was not deficient and we conclude counsel's failure to renew an objection to the drug evidence did constitute deficient performance that satisfied the first prong of *Strickland*. To the extent the PCR judge alternatively found McHam had not satisfied the second prong of *Strickland*—prejudice—because the merits of his Fourth Amendment issue were considered in his direct appeal and rejected, we also find this was error. An appellate court conducting an *Anders* review searches only for preserved issues of arguable merit. Since the Fourth Amendment issue was not preserved, it was not considered on direct appeal. However, we agree with the PCR judge's ultimate findings that McHam did not establish prejudice and did not prove his claim for ineffective assistance of counsel as we conclude McHam's Fourth Amendment claim fails on its merits. Consequently, the decision of the PCR judge is affirmed as modified.[4]

**AFFIRMED AS MODIFIED.**

TOAL, C.J., KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in result only.

---

4. Based on our holding, we need not reach the State's remaining arguments.