**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2019-NMCA-063**

**Filing Date: July 25, 2019**

**No. A-1-CA-36069**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**

**LIBORIO MARTINEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Jeff F. McElroy, District Judge**

Released for Publication October 29, 2019.

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Adrianne R. Turner
Adrianne R. Turner
Albuquerque, NM

for Appellant

**OPINION**

**VARGAS, Judge.**

**{1}** Pursuant to a conditional plea agreement, Defendant Liborio Martinez appeals the district court's denial of his motion to suppress certain evidence discovered after he was stopped for speeding. On appeal, Defendant argues that police engaged in an illegal search of his vehicle when Officer Anthony Perez: (1) opened the door of Defendant's vehicle; and (2) broke "the plane of the car" and entered the vehicle, transforming the traffic stop into a search that required a warrant. We conclude that, under the circumstances of this case, the district court erred in concluding that Officer

Perez's actions of opening Defendant's door was not a search that required a warrant. We therefore reverse.

## BACKGROUND

**{2}** Defendant's conviction stems from a traffic stop initiated by Officer Perez. After observing Defendant driving ten miles per hour over the speed limit, Officer Perez made a U-turn, pulled behind Defendant's vehicle, and activated his emergency lights. Defendant failed to pull over for a "couple miles" over the course of approximately two minutes, prompting Officer Perez to call for assistance. During this time, Defendant did not noticeably increase his speed or take any action to indicate he sought to flee from Officer Perez. Instead, Defendant appeared to maintain his speed and only increased or decreased his speed according to the flow of traffic in front of his car.

**{3}** After Defendant pulled over, Officer Perez exited his vehicle and walked toward the rear passenger's side of Defendant's car. Officer Perez testified that as he approached Defendant's vehicle, he was unable to see whether anyone was in the back because although it was daylight, the rear window was "dark." Officer Perez approached the front passenger's side window and was able to see through that window. The window was not rolled all the way down and he testified that he had a "narrow" point of view. Through that window, however, he could see Defendant holding a cell phone in one hand and trying to light a cigar or a cigarette with the other.

**{4}** As he approached Defendant's passenger's side window, Officer Perez lowered his head to look inside Defendant's vehicle and initiated the following exchange:

| | |
|---|---|
| Perez: | How are we doing, sir? |
| Defendant: | Good. You? |
| Perez: | Officer Perez with State Police. |
| Defendant: | Hey, how's it going? |

Approximately four seconds elapsed from the time Officer Perez lowered his head to look inside the vehicle and the verbal exchange described above was completed. Three seconds into the exchange, as Defendant said "Hey," but before he asked "how's it going," Officer Perez opened the front passenger's side door of Defendant's vehicle. Officer Perez testified that he opened Defendant's door so as to speak with Defendant and prevent him from possibly fleeing. Officer Perez testified that he was unsure why Defendant failed to stop and was initially concerned that Defendant might drive away while Officer Perez was outside of his patrol vehicle.

**{5}** After about twenty seconds of standing outside Defendant's car with the front passenger's side door open, Officer Perez asked Defendant if he had been drinking. Defendant responded that he had not, to which Officer Perez responded that he could smell alcohol. Officer Perez testified that he first noticed an odor of alcohol after he opened the car door. Defendant stated, "Perhaps it's the beer in here," to which Officer Perez asked, "Where is it?" Officer Perez observed an unopened bottle of beer in the

back seat, instructed Defendant to exit the vehicle, initiated a DWI investigation, and arrested him. Defendant was charged with speeding, contrary to NMSA 1978, Section 66-7-301 (2015), and aggravated driving under the influence of intoxicating liquor (DWI), contrary to NMSA 1978, Section 66-8-102(D)(1) (2010, amended 2016).

**{6}** Defendant filed a motion to suppress, which the magistrate court denied. Defendant was found guilty of aggravated DWI and appealed to the district court. Defendant filed a motion to suppress in the district court, arguing that Officer Perez's conduct in opening Defendant's door as well as his conduct of entering the vehicle amounted to searches, both of which required a warrant. The district court denied Defendant's motion. Defendant appealed to this Court pursuant to a conditional guilty plea to the DWI charge, which reserved his right to appeal "any suppression motions[.]"

## DISCUSSION

**{7}** "[A]ppeals from magistrate courts are de novo." *State v. Foster*, 2003-NMCA-099, ¶ 9, 134 N.M. 224, 75 P.3d 824; *see* NMSA 1978, § 35-13-2(A) (1996) ("Appeals from the magistrate courts shall be tried de novo in the district court."). "In a de novo appeal, . . . a district court conducts a new trial as if the trial in the lower court had not occurred." *Foster*, 2003-NMCA-099, ¶ 9. When a party raises a pretrial motion in a de novo appeal, the district court "is to make an independent determination of the merits of the motion." *City of Farmington v. Piñon-Garcia*, 2013-NMSC-046, ¶ 9, 311 P.3d 446.

**{8}** Our "review of a district court's ruling on a motion to suppress involves a mixed question of fact and law." *State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95 (internal quotation marks and citation omitted). "We review the contested facts in a manner most favorable to the prevailing party and defer to the factual findings of the district court if substantial evidence exists to support those findings." *Id.* "[W]e then review de novo the [district] court's application of law to the facts to determine whether the search or seizure were reasonable." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861.

**{9}** The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. Under the Fourth Amendment, "searches and seizures must be reasonable." *State v. Bond*, 2011-NMCA-036, ¶ 11, 150 N.M. 451, 261 P.3d 599. "Warrantless searches [and seizures] are presumed to be unreasonable" and "[t]he [s]tate bears the burden of proving . . . reasonable[ness]. *Id.* ¶ 11. We note that Defendant does not challenge the legality of the traffic stop. *See Leyva*, 2011-NMSC-009, ¶ 31 (explaining that the question of whether the initial stop was lawful is not an issue when the defendant does not contest its legality). Rather, Defendant argues Officer Perez's conduct in opening Defendant's car door was a search requiring either a warrant or justification under an exception to the warrant requirement.

**{10}** The State argues that opening Defendant's car door did not transform a lawful detention into a search that required a warrant, relying on *State v. Simpson*, 2016-NMCA-070, 388 P.3d 277. In *Simpson*, an officer received a report that a male who smelled of alcohol entered a restaurant, passed out in the restroom, left the restaurant, got into a dark blue car, moved the car from one parking space to another, and in so doing, almost struck several other vehicles in the parking lot. *Id.* ¶ 3.

**{11}** The officer arrived at the parking lot and approached a dark blue vehicle with "very dark tinted windows[,]" which he confirmed was the "correct vehicle." *Id.* ¶ 4 (internal quotation marks omitted). Although the dark tint prevented the officer from seeing inside the car or determining whether it was occupied, he walked to the driver's side window, which was cracked a couple of inches, knocked on the car window, waited for a response to no avail, and saw a female in the passenger seat and a man in the back seat. *Id.* ¶¶ 4, 24. "There was nobody in the driver's seat, so there was no one to open the driver's side window, and because of the dark tinted windows, [the officer] could not see inside the vehicle to determine what the occupants were doing." *Id.* ¶ 4. The officer believed "the safest way to make contact with the occupants was to open the driver's side door." *Id.*

**{12}** A divided panel of this Court held that the officer's "conduct in opening the [defendant's car] door did not transform his lawful investigative detention into a search that required a warrant[.]" *Id.* ¶ 20. Relying on *State v. Lovato*, 1991-NMCA-083, 112 N.M. 517, 817 P.2d 251, the majority concluded that "[u]nder all the circumstances confronting [the officer], this safety precaution was reasonable and permissible under the governing law." *Simpson*, 2016-NMCA-070, ¶ 22. Also, citing *State v. Cobbs*, 1985-NMCA-105, 103 N.M. 623, 711 P.2d 900, the majority explained that "even when an officer is merely investigating a traffic offense, he faces an inordinate risk when he approaches a subject seated in an automobile[,]" and the officer may therefore "take reasonable safety precautions while conducting investigatory detentions[.]" *Simpson*, 2016-NMCA-070, ¶ 23 (internal quotation marks and citation omitted).

**{13}** Our review of *Simpson* and the cases it cites reveals that the common concern raised in each of those cases was officer safety. In *Lovato*, this Court concluded it was not unreasonable for officers to open a car door after they received a report of a drive-by shooting, they pulled over a car they believed to be the car described in the report, their visibility was limited because of the late hour, they believed that either the occupants were armed or that there was a firearm in the vehicle, three people exited the vehicle from the front and two people exited from the back, and the officers were unsure whether another occupant was lying on the floor of the vehicle. 1991-NMCA-083, ¶¶ 2, 33. We explained that "the officers had not yet determined that all the occupants of the vehicle had exited the vehicle[,]" and that the officers "were still confronted with a potential danger." *Id.* ¶ 35. This Court held in *Lovato* that "[u]nder such circumstances, the police were not required to forego reasonably prudent steps necessary for their own safety[,]" and relied on *Terry v. Ohio*, 392 U.S. 1, 27 (1968) (permitting "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual"), and *Cobbs*, for the

proposition that "[l]aw enforcement officers carrying out an investigatory stop are permitted to make a limited search for weapons that might be used to harm them." *Lovato*, 1991-NMCA-083, ¶ 34.

**{14}** In *Cobbs*, this Court evaluated the constitutionality of an officer's patdown search of a suspect after receiving a report of "suspicious persons" and a possible residential burglary in progress, pulling over a vehicle that left the residence involved in the reported burglary, and ordering the suspects to exit the vehicle. 1985-NMCA-105, ¶¶ 4-6, 18. This Court explained that the risk to an officer who approaches a subject in a vehicle "increases immeasurably when the officer is called upon to investigate a serious crime." *Id.* ¶¶ 21-25. Thus, requiring an "officer to question the suspects before ordering them from the car and frisking them is an untenable demand[,]" and the officer was justified under the circumstances present in that case "in ordering the defendant out of the car and frisking him before questioning him." *Id.* ¶ 25. We further held that the right to conduct a protective search is "automatic" when

> the suspect has been stopped upon the suspicion that he has committed, was committing, or was about to commit a type of crime for which the offender would likely be armed, whether the weapon would be used to actually commit the crime, to escape if the scheme went awry, or from protection against the victim or others involved.

*Id.* ¶ 34 (internal quotation marks and citation omitted). However, to conduct a protective search upon a person suspected of a nonviolent offense, "additional articulable facts of potential danger must be present, as well as the suspicion of criminal activity." *Id.* ¶ 35.

**{15}** Applying the foregoing authorities and the circumstances surrounding Officer Perez's conduct in opening Defendant's car door, we are persuaded that Officer Perez's conduct transformed an otherwise lawful investigative detention into a search that required a warrant. We acknowledge Officer Perez's testimony that he was initially concerned that Defendant might drive away, and that he was unable to see inside Defendant's vehicle through the rear passenger's side window. However, we find significant differences between the circumstances of this case and those relied upon in *Simpson*. Unlike the officers in *Lovato* who were investigating a violent crime, Officer Perez pulled Defendant's vehicle over for a speeding violation. Furthermore, unlike the officer in *Simpson*, who came upon an empty driver's seat, knocked on the window with no response, saw a male in the back seat during an investigation for a male DWI suspect and testified that the "safest way to make contact with the occupants was to open the driver's side door," *Simpson*, 2016-NMCA-070, ¶ 4, Officer Perez's overarching concern when he opened Defendant's door was to "get inside," have a conversation, and possibly take Defendant's keys. Unlike the officer in *Simpson*, Officer Perez did not have difficulty making contact with Defendant when he approached the vehicle, yet he opened the door to Defendant's vehicle within three seconds of his initial contact.

**{16}** To the extent that the State cites *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977), for the analogous proposition that an officer may, for reasons of officer safety, order a driver to get out of the car, we are not presented with a case wherein the officer took action out of concern for his safety. Nor do the circumstances leading up to and culminating in Officer Perez's opening of Defendant's car door support an objectively reasonable belief that Defendant posed a threat to Officer Perez's safety. *See Leyva*, 2011-NMSC-009, ¶ 25 (explaining that a protective search of a stopped vehicle for reasons of officer safety "must be based upon the objectively reasonable belief that the individuals stopped pose a threat to officer safety"); *cf. id.* ¶ 61 n.9 ("Even if [the officer] himself had not discredited any attempt to include [the defendant's] delay in pulling over after the emergency lights had been activated, we would not find this factor especially weighty in the reasonable suspicion analysis."). Thus, the present case is distinguishable from *Mimms*, *Lovato*, and *Simpson*.

**{17}** Insofar as the district court based its ruling on the possibility that Defendant would flee because he failed to stop for an extended period of time, the State has not cited authority to support the proposition that the possibility of a motorist's flight in his or her vehicle during a traffic stop provides a basis to open the door to a defendant's vehicle without a warrant or without some other justification under an exception to the warrant requirement. *See Bond*, 2011-NMCA-036, ¶ 11 (explaining that "[t]he [s]tate bears the burden of proving that a warrantless search or seizure is reasonable"). Indeed, under the facts of this case, we cannot conclude that Officer Perez reasonably believed that Defendant would flee after pulling his vehicle over. *See State v. Garcia*, 2005-NMSC-017, ¶ 33, 138 N.M. 1, 116 P.3d 72 (explaining that "[the appellate courts] may uphold a search or seizure if the facts known to the officer, viewed objectively, would provide valid constitutional grounds for the officer's actions"). We acknowledge that Defendant failed to pull over for a "couple miles" over the course of approximately two minutes, and that Officer Perez called for assistance during that time. However, neither Officer Perez's testimony nor his dash-cam video indicate that Defendant increased his speed or otherwise took evasive measures after Officer Perez activated his emergency lights. Rather, Defendant appeared to either maintain or adjust his speed according to the flow of traffic. Furthermore, neither Officer Perez's testimony nor his dash-cam video reveal any actions by Defendant after pulling his car over that would demonstrate he might drive away. In fact, when Officer Perez approached Defendant's car, he found him holding his cell phone in one hand and trying to light a cigar or cigarette with the other, and neither of those actions suggest that Defendant was planning to drive away. Accordingly, we cannot conclude that the facts of this case give rise to a reasonable belief that Defendant would flee after pulling over.

**{18}** We conclude that under the circumstances of this case the State failed to present evidence of "additional articulable facts of potential danger . . . as well as the suspicion of criminal activity" to support a protective search as part of Defendant's traffic stop. *Cobbs*, 1985-NMCA-105, ¶ 35. Officer Perez's conduct in opening Defendant's car door amounted to a search that required a warrant. *See State v. Cleave*, 2001-NMSC-031, ¶ 11, 131 N.M. 82, 33 P.3d 633 ("A search is an intrusion on a person's reasonable expectation of privacy." (internal quotation marks and citation omitted)); *see also*

*McHam v. State*, 746 S.E.2d 41, 49 (S.C. 2013), ("[We h]old the opening of the door of an occupied vehicle is an intrusion, however slight, that generally constitutes a search for purposes of the Fourth Amendment. In such cases, a search results based on the fact that it enables the officer to observe portions of the interior of the vehicle that would not otherwise be readily visible to those who are outside the vehicle."), *abrogated on other grounds by Smalls v. State*, 810 S.E.2d 836, 839 n.2 (S.C. 2018). As we have explained above, "[w]arrantless searches are presumed to be unreasonable . . . [and t]he [s]tate bears the burden of proving . . . reasonable[ness]." *Bond*, 2011-NMCA-036, ¶ 11 (citation omitted). "[T]o prove that a warrantless [search or] seizure is reasonable, the [s]tate must prove that it fits into an exception to the warrant requirement." *Id.* (internal quotation marks and citation omitted).

**{19}** "The Fourth Amendment allows a warrantless search of an automobile and of closed containers found within an automobile when there is probable cause to believe that contraband is contained therein." *State v. Bomboy*, 2008-NMSC-029, ¶ 5, 144 N.M. 151, 184 P.3d 1045; *see California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."); *United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). The State has not argued, nor does our review of the evidence demonstrate, that Officer Perez had probable cause to believe contraband or evidence was contained in Defendant's vehicle at the time he opened the door. Nor does the State argue Officer Perez's search fits into any of the other "[r]ecognized exceptions to the warrant requirement[; i.e.,] exigent circumstances, searches incident to arrest, inventory searches, consent, hot pursuit, open field, and plain view." *Bond*, 2011-NMCA-036, ¶ 11 (internal quotation marks and citation omitted). We therefore conclude that Officer Perez's warrantless search of Defendant's vehicle was unreasonable and impermissible under the Fourth Amendment. Accordingly, we need not proceed to Article II, Section 10 of the New Mexico Constitution. *See State v. Ketelson*, 2011-NMSC-023, ¶ 10, 150 N.M. 137, 257 P.3d 957 (requiring that under our interstitial approach, "we first consider whether the right being asserted is protected under the federal constitution. . . . If the right is protected by the federal constitution, then the state constitutional claim is not reached." (internal quotation marks and citation omitted)). Furthermore, in light of our holding, we need not address whether Officer Perez, or any portion of his body, actually entered Defendant's vehicle.

**Inevitable Discovery**

**{20}** The State argues that even if opening Defendant's door was an unlawful search, the inevitable discovery doctrine permits the admission of any evidence obtained as a result of such conduct. "The inevitable discovery doctrine is an exception to the exclusionary rule." *State v. Romero*, 2001-NMCA-046, ¶ 10, 130 N.M. 579, 28 P.3d 1120. "Application of this doctrine permits the admission of unlawfully seized evidence if that evidence would have been seized independently and lawfully in due course." *Id.* This "doctrine applies where evidence that was obtained through unlawful police

conduct inevitably would have been otherwise discovered through a different and independent means." *State v. Haidle*, 2012-NMSC-033, ¶ 39, 285 P.3d 668. "For the doctrine to apply, the alternate source of evidence must be pending, but not yet realized." *Romero*, 2001-NMCA-046, ¶ 10. The State bears the burden "to prove by a preponderance of the evidence that absent the illegal search, the [evidence] would have been discovered by independent and lawful means." *Id.*

**{21}** In arguing that the evidence obtained as a result of opening Defendant's door—namely the detection of the odor of alcohol—would have been discovered through different and independent means, the State argues "Officer Perez would have smelled alcohol while continuing to interact with Defendant as part of the speeding investigation." A brief period of time passed before Officer Perez detected the odor of alcohol with the door open, and thus, according to the State, "it is more likely than not that Officer Perez would have made the same observation over the minutes it would have taken to complete the detention for speeding." Here, the State appears to confuse possibility with inevitability. We are not tasked with speculating as to whether Officer Perez *could* have detected the odor of alcohol had he continued with his traffic investigation, but rather whether he *would* have obtained such evidence through lawful means wholly independent of his illegal actions. *See Haidle*, 2012-NMSC-033, ¶ 39. We therefore find the State's argument unavailing.

**CONCLUSION**

**{22}** For the foregoing reasons, we reverse the district court's denial of Defendant's motion to suppress, and remand to the district court to permit Defendant to withdraw his conditional plea. *See State v. Jean-Paul*, 2013-NMCA-032, ¶ 34, 295 P.3d 1072 (permitting the defendant to withdraw her conditional plea after prevailing on her appeal of the district court's denial of her motion to suppress).

**{23}  IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**CYNTHIA A. FRY, Judge Pro Tempore**