This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39914

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**BENNIE LEWIS GARDNER,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF UNION COUNTY**
**Melissa A. Kennelly, District Court Judge**

Raúl Torrez, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**DUFFY, Judge.**

{1}     The State appeals the district court's order suppressing evidence found after Defendant gave consent to search the cab of his semi-truck. The district court concluded that the stop violated the Fourth Amendment because Defendant's consent was coerced. The State argues that the length of the stop was reasonable and, in the alternative, two exceptions to the exclusionary rule apply. We affirm.

## BACKGROUND

**{2}**     The district court made extensive findings of fact in its suppression order, and we adopt those findings here to the extent they are unchallenged on appeal. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298. Defendant is a truck driver who was stopped in Clayton, New Mexico after passing by a weigh station. During the stop, Officer Mario Montaño approached the cab to retrieve Defendant's license and registration. Defendant provided his license and registration for the truck, but was unable to provide the registration for the trailer. After the officer called in Defendant's driver's license number and confirmed that it was valid, he began a drug interdiction investigation because Defendant was "acting extremely nervous." Officer Montaño repeatedly asserted that he had smelled marijuana when he approached to get Defendant's license and registration and asked multiple times for consent to search the cab. Officer Montaño also told Defendant he would get a search warrant and search the cab. Defendant consistently denied that he had drugs in the cab and refused to grant consent for the search. Approximately thirty-five minutes into the stop, Officer Montaño turned off his lapel microphone and, after an inaudible interaction with Defendant, proceeded to search the cab of the truck and the contents of Defendant's suitcase. The district court found that during this inaudible interaction, Defendant expressed some form of consent for the officer to search his cab and personal belongings.

**{3}**     While searching the cab, no marijuana was found. However, Officer Montaño found a twelve-year-old girl hiding under some blankets. The officer released the child back to Defendant after confirming with her mother that the child had her permission to be in the truck with Defendant. Defendant was placed on a twenty-four hour hold and was unable to leave.

**{4}**     The next day, Officer Montaño's supervisor instructed him to contact the owner of the truck, Quality Trucking, to find the truck's location electronically so police could do a welfare check on the child. Quality Trucking found Defendant's location and instructed him to stop and meet with state police officers. Defendant did not comply and was then stopped by a New Mexico State Police officer. The child was placed in protective custody with a foster family, where she later made allegations against Defendant. Further evidence was then seized from the truck pursuant to a search warrant.

**{5}**     The district court ruled in relevant part that the search was unreasonable because Defendant's consent to the search of his truck was coerced by the officer, who claimed to have probable cause to obtain a search warrant when none existed. The district court concluded the search violated the Fourth Amendment and excluded all evidence obtained as a result of the stop.

**DISCUSSION**

**I.     The State Does Not Dispute That Defendant's Consent Was Coerced**

**{6}**     We briefly address the State's argument that the district court erred in its suppression ruling because the overall length of the stop was reasonable and at each

point where the stop was expanded, Officer Montaño had reasonable suspicion supporting that expansion. However, the State has not challenged the district court's finding that Defendant's consent was coerced, and that determination is dispositive here. *See State v. Lovato*, 2021-NMSC-004, ¶¶ 21, 28, 478 P.3d 927 (concluding that the defendant's consent was involuntary and holding that "[a]bsent a showing of probable cause, a defendant's mere acquiescence to an assertion of lawful authority renders a subsequent search unlawful").

**{7}** The State acknowledges that "[u]nder *Lovato*, the issue in this case, as correctly noted by the court, was that, when Defendant gave his consent . . . the officer did not have probable cause to obtain a search warrant." The State concedes that the district court's analysis of the issue, and its ruling that Defendant's consent was coerced, "was technically correct." Consequently, even if we agreed with the State that Officer Montaño had reasonable suspicion throughout the stop and probable cause after a drug dog alerted (an event that occurred after Defendant had already given consent for the search), those facts would not render the unconstitutional search lawful. The State has not otherwise argued that Officer Montaño had probable cause to obtain a search warrant *before* Defendant gave consent or that Defendant's consent, when given, was voluntary. We accordingly perceive no error in the district court's determination that Defendant's involuntary consent rendered the ensuing search unlawful.

## II.    The Inevitable Discovery Doctrine Does Not Apply

**{8}** The State next argues that "the inevitable discovery doctrine nonetheless operates to justify the admission of the discovery of the child, her subsequent disclosures, and the evidence from the search warrant." Under the inevitable discovery exception to the exclusionary rule, the State has the burden to prove by a preponderance of the evidence that the "evidence would have been seized independently and lawfully in due course." *State v. Romero*, 2001-NMCA-046, ¶ 10, 130 N.M. 579, 28 P.3d 1120. "The doctrine is applicable where evidence may have been seized illegally, but where an alternate legal means of discovery, such as a routine police inventory search, would inevitably have led to the same result." *Id.*

**{9}** The State's theory of inevitable discovery rests on a hypothetical of what would have happened if Officer Montaño had completed a regulatory search instead of pursuing a drug investigation. The State argues that "[w]hen Defendant by-passed the weigh station, [Officer] Montaño would have stopped him for that violation and would have conducted a road-side inspection that would have taken approximately two to four hours, given that Defendant could not produce his registration. [Officer] Montaño would have entered the sleeper berth to check the bedding and would have discovered the girl, even if he had never asked Defendant a single question[] about marijuana." The State also argues that, under state law regulating commercial vehicles, the officer *should* have detained the vehicle until Defendant produced the required paperwork.

**{10}** Even if the State is correct regarding what Officer Montaño should have done under commercial trucking regulations and in the absence of a drug investigation, the

unchallenged evidence of record is that Officer Montaño did not comply with or complete a regulatory inspection here, and was not interested in doing so beyond asking for Defendant's license and registration documents. The district court concluded, "It was reasonable for Officer Montaño to stop Defendant for the purpose of inquiring into why he passed the weigh station and completing his regulatory inspection;" however, he "immediately expanded the detention of Defendant from a regulatory inspection to a drug interdiction investigation because Defendant was acting nervous." The district court further found that Officer Montaño was not genuinely interested in completing a regulatory inspection after the drug interdiction investigation began. The State has not challenged these findings on appeal.

**{11}** On this record, the State's inevitability argument is nothing more than a hypothetical as to what might have happened had Officer Montaño not abandoned the regulatory inspection in favor of a drug investigation. Because the nascent regulatory search was never completed, and there are no facts indicating that officers were required to return to and complete the regulatory inspection at any point, the State has not shown that it would have obtained the evidence at issue through other lawful means. *See State v. Martinez*, 2019-NMCA-063, ¶ 21, 450 P.3d 405 (holding that the mere possibility of lawful discovery does not satisfy the state's burden). We conclude the State has not met its burden to demonstrate inevitability by a preponderance of the evidence.

### III.    The Attenuation Doctrine Does Not Apply

**{12}** The State also argues that the discovery of the child, the child's subsequent allegations while in foster care, and evidence seized pursuant to the search warrant should have been admitted under the attenuation doctrine, which permits the State to admit evidence when "the relationship between the unlawful search or seizure and the challenged evidence becomes sufficiently weak to dissipate any taint resulting from the original illegality." *State v. Tapia*, 2018-NMSC-017, ¶ 15, 414 P.3d 332 (internal quotation marks and citation omitted). Attenuation is measured using three factors: "(1) the lapsed time between the illegality and the acquisition of the evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct." *Id.*

**{13}** Regarding the first factor, the State argues that that there was a large temporal separation. But of the three different pieces of evidence the State argues ought to have been admitted, there is no question that the discovery of the child occurred during the course of the unlawful search. As for the other evidence at issue, even if we were to conclude there was a sufficient temporal separation before its discovery, it nevertheless fails on the second prong because there was not an intervening circumstance creating a break in the causal chain. *Id.* ¶ 36 (stating that "[a]n intervening circumstance is one that breaks the relationship between the illegal conduct and the evidence obtained"). The State concedes that child's allegations were only obtained because the officer's supervisor was following up on the unlawful discovery of the child. There was no causal break, and therefore, the attenuation doctrine does not apply.

**{14}** The State analogizes the circumstances of this case to *State v. Monafo*, 2016-NMCA-092, 384 P.3d 134, where an officer stopped a flat-bed tow truck towing a van for a possible traffic violation. *Id.* ¶ 3. After completing the initial traffic stop, the officer got back onto the road and then received information about a possible stolen van. *Id.* ¶ 4. The officer circled back and initiated a second stop. *Id.* But here, unlike *Monafo*, there is nothing that justified a second stop as part of a separate investigation. The only new evidence the State offers is that Defendant did not stop a second time after being radioed by his employer. However, that information was not what prompted the officer's supervisor to follow up on the initial stop and continue the investigation in the first place. The district court found that "[a]lthough police released the child back to Defendant's care and custody during the 24-hour period within which Defendant was ordered to remain at the Clayton truck stop, police continued with their investigation during this time and determined that Defendant should be seized again and the child questioned and taken into State custody." Thus, the facts here are distinguishable from *Monafo*, in that an investigation began with finding the child and progressed into a second stop resulting in the placement of the child in foster care, without any intervening event.

**CONCLUSION**

**{15}** We affirm the district court's suppression order.

**{16} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**MICHAEL D. BUSTAMANTE, Judge,
retired, sitting by designation**