This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42416**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MARVIN TOLEDO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Douglas W. Decker, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Justin Lauriano, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Brian Parrish, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Chief Judge.**

{1}     This matter was submitted to the Court on Defendant's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, the Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, answer brief, and reply brief, we reverse for the following reasons.

**{2}** Defendant appeals his conviction for driving while under the influence of intoxicating liquor, contrary to NMSA 1978, Section 66-8-102(A) (2016) [SRP 18], asserting that the district court erred in denying his motion to suppress evidence [BIC 5]. In particular, Defendant argues the district court's finding that Defendant gave unequivocal consent for the officer to search was not supported by the evidence. [BIC 5] Defendant also asserts that the officer's warrantless search in this case was unreasonable because Defendant did not consent to the search. [BIC 5]

**BACKGROUND**

**{3}** The relevant facts in this case are uncontested. [BIC 6] The officer stopped Defendant for speeding.[1] [SRP 203] After parking behind Defendant's truck, the officer approached the passenger-side door, shining his flashlight into the tinted rear windows of the truck. [BIC 6; SRP 203] The passenger window was not rolled down, but the officer heard Defendant use the "electronic door locking feature" to unlock the vehicle [SRP 190, 192, 203; AB 2], after which the officer immediately opened the passenger door, causing the interior lights of the vehicle to turn on. [Id.] The officer then informed Defendant of the reason for the stop. [Id.]

**{4}** There was not any testimony regarding whether the passenger window was operational or whether Defendant intended to unlock the passenger door when he unlocked the vehicle using the "electronic door locking feature." [SRP 203] The officer testified that he sometimes knocks on the window if it is not already rolled down [SRP 192], but in this instance, the officer did not knock on Defendant's window, request that Defendant open the door, or ask for permission to open the door. [SRP 192; BIC 13]

**{5}** The district court concluded that under the circumstances surrounding the traffic stop—the officer in uniform driving a marked police vehicle with the emergency lights engaged at the time of the stop—it was reasonable for a person to voluntarily unlock the doors of their vehicle, and "if the sound of the unlocking is loud enough . . . the officer can reasonably believe that it was an invitation voluntarily given . . . to open the door." [SRP 204] The district court therefore concluded that the officer "reasonably took that sound as unequivocal testimony/invitation to open the passenger side door to effect a way to communicate with [D]efendant." [SRP 203] Accordingly, the district court concluded that Defendant's "act of unlocking the passenger side door . . . was voluntarily . . . given as unequivocal consent for [the officer] to open the door to establish communication." [SRP 205] In denying Defendant's motion, the district court specifically pointed out that the officer did not enter the vehicle after opening the door. [SRP 195]

**DISCUSSION**

**{6}** We review the district court's denial of Defendant's motion to suppress as a mixed question of fact and law. *See State v. Ontiveros*, 2024-NMSC-001, ¶ 8, 543 P.3d 1191 (stating that factual findings are reviewed for substantial evidence). We apply the

---

[1]Defendant does not contest the legality of the traffic stop. [BIC 6]

law to the facts to determine de novo the constitutional reasonableness of the search. *Id.*

**{7}** Both the Fourth Amendment of the United State Constitution and Article II, Section 10 of the New Mexico Constitution protect against unreasonable searches. *State v. Ortiz*, 2023-NMSC-026, ¶ 6, 539 P.3d 262. Searches conducted without a warrant are presumed to be unreasonable, and the State bears the burden of proving reasonableness. *Id.* To prove that a warrantless search is reasonable, the State must prove that it fits into an exception to the warrant requirement. *State v. Martinez*, 2019-NMCA-063, ¶ 18, 450 P.3d 405. "A search based upon a valid consent is an exception to the requirement for obtaining a search warrant." *State v. Flores*, 2008-NMCA-074, ¶ 12, 144 N.M. 217, 185 P.3d 1067.

**{8}** Whether consent to search is voluntary is a question of fact. *See State v. Davis*, 2013-NMSC-028, ¶ 13, 304 P.3d 10. The State has the burden to prove voluntariness, which depends on "the totality of all the surrounding circumstances." *State v. Duffy*, 1998-NMSC-014, ¶ 73, 126 N.M. 132, 967 P.2d 807 (identifying "the individual characteristics of the person who gave consent, the circumstances under which the person is detained, and the manner in which police requested the search" as relevant considerations), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. We assess the validity of consent to search under a three-tiered analysis: "(1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *Davis*, 2013-NMSC-028, ¶ 14 (internal quotation marks and citation omitted).

## Search

**{9}** The State asserts there was no "search" because in opening the door, the officer only intended to initiate contact with Defendant. [AB 4] The State has not, however, identified any authority to suggest the subjective intent of the investigating officer is relevant under these circumstances. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."); *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (explaining that where arguments are not supported by cited authority, we presume counsel was unable to find supporting authority, will not research authority for counsel, and will not review issues unsupported by authority).

**{10}** In *Martinez*, 2019-NMCA-063, the state made the same argument under factually analogous circumstances. There, the officer who initiated the traffic stop approached the passenger side of the defendant's vehicle, noting that he was unable to see through the back windows. *Id.* ¶ 3. The passenger window was partially open, affording the officer a narrow view into the vehicle, through which he could see the defendant. *Id.* The officer initiated verbal contact with the defendant, and approximately three seconds into the exchange, the officer opened the passenger door of the vehicle. *Id.* ¶ 4. According

to the testimony, the officer opened the door to speak with the defendant and prevent him from fleeing. *Id.* Noting that none of the testimony supported an objectively reasonable belief that the defendant posed a threat to officer safety, the *Martinez* court distinguished the cases cited by the state that relied upon a concern for officer safety, rejected the state's assertion that the officer sought to prevent the defendant from fleeing, and concluded that the officer's actions amounted to a warrantless search. *Id.* ¶¶ 10-16; *see id.* ¶ 18 (recognizing that "opening [the d]efendant's car door amounted to a search that required a warrant" because "the opening of the door of an occupied vehicle is an intrusion, however slight, that generally constitutes a search for purposes of the Fourth Amendment" that "enables the officer to observe portions of the interior of the vehicle that would not otherwise be readily visible to those who are outside the vehicle").

**{11}** Like in *Martinez*, the State in this case failed to proffer any testimony to support an objectively reasonable belief that Defendant posed a threat to the officer's safety. *See id.* ¶¶ 10-15. Accordingly, the State's citation to *State v. Simpson*, 2016-NMCA-070, ¶ 4, 388 P.3d 177, is unpersuasive. *See Martinez*, 2019-NMCA-063, ¶¶ 13, 15. The State's citation to *State v. Mailman*, 2010-NMSC-036, 148 N.M. 702, 242 P.3d 269, is similarly unpersuasive, as the Court in that case did not consider the constitutionality of the officer's actions under the search and seizure clause of the state or federal constitutions. [AB 7] *See Dominguez v. State*, 2015-NMSC-014, ¶ 16, 348 P.3d 183 (recognizing that generally, "cases are not authority for propositions not considered" (internal quotation marks and citation omitted)). Pursuant to *Martinez*, the officer opening the passenger's side door of Defendant's truck constitutes a search. *See* 2019-NMCA-063, ¶ 18.

**Consent**

**{12}** Defendant argues that the act of unlocking the door in this case was ambiguous, such that it cannot amount to "specific and unequivocal consent." [BIC 13] We agree. In *Davis*, 2013-NMSC-028, our Supreme Court identified various ways in which specific and unequivocal consent can be given. *See id.* ¶¶ 16-18 (identifying "an affirmative and direct oral response to an officer's request," a "response without hesitation," and an "act of signing a consent to search form" as the variety of ways that specific and unequivocal consent can be given). In doing so, it specified the need for clarity in oral questions and responses, *id.* ¶ 16, emphasizing that "testimony must be clear and positive in order to show specific and unequivocal consent," *id.* ¶ 17.

**{13}** Here, the testimony lacks the clarity necessary to establish consent. Defendant contends that no New Mexico authority condones nonverbal consent, but we need not decide that question in the present case. [BIC 10-11] According to the testimony, the officer did not seek Defendant's permission to open the door, did not knock on the window, and did not otherwise indicate a desire to speak to Defendant. None of the officer's actions lend clarity or specificity. *See State v. Muñoz*, 2008-NMCA-090, ¶ 20, 144 N.M. 350, 187 P.3d 696 (affirming a finding of consent based in large part on the clarity of the officer's request, followed by subsequent compliance with each specific

request). Defendant neither provided an affirmative, direct oral statement, nor signed a consent form—both a means by which specific and unequivocal consent can be given. *See id.* ¶¶ 16-18; *Black's Law Dictionary*, (12th ed. 2024) (defining "specific" in pertinent part as "explicit"). Defendant's nonverbal consent lacked the specificity needed to define the parameters of the search it purportedly allows. *Cf. State v. Flores*, 1996-NMCA-059, ¶ 22 ("The scope of the search is defined by and limited to the actual consent given."). The State relies on speculation to lend clarity, asserting that Defendant could have rolled his window down if he had meant to withhold consent. [AB 5] Clear and positive evidence, however, is required, and speculation could support either conclusion. As the prosecutor acknowledged in the district court, it was possible the window was broken and could not be lowered. [AB 11]

**{14}** We conclude that the testimony in this case is not clear and positive evidence that, in light of the presumption that disfavors the waiver of constitutional rights, proves clearly and convincingly that Defendant consented to the officer's search. *See Davis*, 2013-NMSC-028, ¶¶ 10, 14; *Black's Law Dictionary* (12th ed. 2024) (defining "specific" in pertinent part as "explicit" and defining "unequivocal" as "unambiguous; clear; free from uncertainty"). Accordingly, we need not proceed to consider whether Defendant's actions were the result of duress or coercion, or whether the officer's actions were a violation of Article II, Section 10 of the New Mexico Constitution. *See Martinez*, 2019-NMCA-063, ¶ 19 (declining, under our interstitial approach, to proceed to an analysis under the state constitution where the right being asserted is sufficiently protected under the federal constitution).

**CONCLUSION**

**{15}** Based on the foregoing, we reverse the district court's denial of Defendant's motion to suppress, and remand to the district court.

**{16}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**KATHERINE A. WRAY, Judge**